In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3084

Union Oil Company of California,

Plaintiff-Appellee,

v.

Dan Leavell, et al.,

Defendants-Appellants.


Appeal from the United States District Court
for the Southern District of Illinois.
No. 98-4243-JLF--James L. Foreman, Judge.


Argued June 8, 2000--Decided July 18, 2000


   Before Easterbrook, Kanne, and Williams, Circuit
Judges.

   Easterbrook, Circuit Judge.   Members of the
Leavell family bought some equipment for their
recycling business in 1992. (A closely held
corporation was the purchaser. For simplicity we
use "the Leavells" to refer to the persons and
business entities involved.) Four years later the
Leavells demanded that Unocal, the seller, remove
the machinery and compensate them for
environmental harm that, they insisted, it had
caused. According to the Leavells, Unocal's
equipment led to the concentration of radium 226,
an element naturally present in soil, whose decay
produces radon gas, which plagues the basements
of many homes. With the aid of a district judge
the parties settled their differences: Unocal
took back the equipment, paid the Leavells
$435,000, and deposited another $100,000 into an
escrow account that could be drawn on for
approved cleanup work. In exchange the Leavells
promised that they would fully clean up the site
and that the work

shall be performed in full cooperation with and
to the complete satisfaction of the Illinois
Department of Nuclear Safety ('IDNS'). IDNS shall
monitor the remediation from inception to
conclusion and shall review and approve all
decommissioning plans or work plans prior to
remediation work beginning at the Property. The

Leavells shall remediate the Property and dispose of any contaminated material in the manner set out in the decommissioning plan or work plan approved by IDNS. . . . All parties understand and acknowledge that after remediation has taken place, it is impossible to predict the time it will take for the IDNS to provide information concerning the Property's qualification for use, but the Leavells agree to use their best, good faith efforts to obtain an unrestricted use classification for the Property.

Notwithstanding this promise, the Leavells began the cleanup before submitting a plan or obtaining approval, making it impossible for the IDNS to "monitor the remediation from inception to conclusion". The escrow agent (Don C. Staab, the Leavells' original lawyer) was unfaithful, disbursing all but $2,000 without assuring compliance with the conditions. This litigation under the diversity jurisdiction ensued. After the suit was under way the Leavells at last submitted a work plan to the IDNS, but by then the Leavells had finished their planned work, which led the IDNS to reject the application and require the Leavells to start over, with the aid of appropriate engineering expertise. Unocal asked the district court to direct the Leavells to submit a plan to the IDNS, obtain approval, and follow the approved plan to the letter. The Leavells, who believe that they have done enough already, named the IDNS as a third-party defendant, seeking $25 million in damages (and a bar on future agency oversight) because the IDNS refused to approve the Leavells' methods.

The district judge put the third-party claim on the back burner while dealing with the dispute between Unocal and the Leavells. After an exasperating series of conferences and hearings at which the Leavells revealed that they knew little and cared less about their obligations under the contract (or for that matter state environmental law), the district court granted summary judgment for Unocal and entered an order of specific performance. The judge directed the Leavells to carry out eight tasks. For example, the first was to "[o]btain the services of a qualified health physics consultant approved by IDNS."

Although the Leavells did not seek a stay from either the district court or this court, their lawyer informed us at oral argument that they have not performed any of these tasks and have no intention of doing so now or in the future. Surprisingly, the district judge has declined to enforce the order, stating that the notice of appeal deprives him of jurisdiction. This is not so. A notice of appeal does not stay enforcement

of a district court's order. Thornton v. Wahl, 787 F.2d 1151 (7th Cir. 1986). A judge may--and should--enforce an un-stayed injunction while an appeal proceeds. Resolution Trust Corp. v. Smith, 53 F.3d 72, 76 (5th Cir. 1995); Chrysler Motors Corp. v. Industrial Workers, 909 F.2d 248, 250 (7th Cir. 1990); Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 16 Federal Practice and Procedure sec.3921.2 (2d ed. 1996). Otherwise the judge deprives the prevailing parties of the benefit of their judgment and rewards defiance. A notice of appeal "divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982) (emphasis added), but whether the addressee of an injunction has complied is not a subject "involved in the appeal." Whether the judge should have held a contempt hearing last year is water under the bridge, however.

Because the third-party claim remains pending in the district court, appellate jurisdiction is questionable. Although the IDNS should have been dismissed immediately--for the eleventh amendment bars the claim to the extent it relies on state law, see Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 117 (1984), and the federal law to which the Leavells allude does not treat states and their agencies as "persons" subject to suit, see Arizonans for Official English v. Arizona, 520 U.S. 43, 69 (1997); Will v. Michigan Department of State Police, 491 U.S. 58 (1989)--that did not occur, and the unresolved third-party claim means that the decision in the Unocal-Leavell portion of the case is not "final." The parties contend that the district court entered a partial final judgment under Fed. R. Civ. P. 54(b), but the district judge did not explain why the case should be cleaved in two-- especially not when it is so easy to resolve the claim against the IDNS and produce a genuine final judgment. Nor does the use of Rule 54(b) make sense, given 28 U.S.C. sec.1292(a)(1), which authorizes immediate appeal of interlocutory injunctions. The district judge did not use the magic word "injunction," but his order is injunctive in nature, requiring the Leavells to perform enumerated steps under threat of the contempt power. If the district judge had entered a money judgment--say, one requiring the Leavells to refund what they have received from Unocal--an appeal might well be premature while the claim against the IDNS is unresolved. But as an appeal from an injunction it is securely within our jurisdiction.

On the merits, the Leavells' appeal is frivolous. They did not produce affidavits or any other evidence in response to Unocal's motion for

summary judgment, so the record is lopsided and demonstrates that from the get-go the Leavells ignored their undertakings. The Leavells' current lawyer believes that denials in the answer to Unocal's complaint block summary judgment, but this misunderstands federal practice. See Fed. R. Civ. P. 56(e). We attend only to the evidence of record, which demonstrates that the Leavells began cleanup work before seeking the IDNS's approval, thus violating their promise that the "IDNS shall monitor the remediation from inception to conclusion and shall review and approve all decommissioning plans or work plans prior to remediation work beginning at the Property" (emphasis added). Most of the Leavells' troubles with the IDNS stem from their work-first-approval-later approach, reversing the contractual sequence. Breach is established.

Specific performance was an appropriate remedy. Unocal bargained for a clean site, with a clean bill of health from the IDNS, to avoid a risk of liability to those who may purchase the land from the Leavells or neighbors who may say that radon gas has wafted from the Leavells' land to theirs. Damages cannot produce that surety. And the Leavells' argument that they should be relieved of their promise because cleanup according to the IDNS's rules is more costly than they anticipated is a poor excuse, for contracts are designed to allocate risks such as this; the Leavells obtained a fixed payment, not an open purse. What is more, a contract may be set aside on the basis of mutual mistake (the doctrine closest to the Leavells' position, to the extent we can decipher it) only if it can be unwound. To obtain release from their undertaking, the Leavells must offer to return the $535,000 Unocal paid. Fleming v. U.S. Postal Service, 27 F.3d 259 (7th Cir. 1994). But the Leavells have so far tendered not a penny; they want to keep the money and shirk their obligations, an outcome no court could tolerate.

No more need be said about the merits, but a procedural matter requires attention. Almost every document filed in this case, even the district court's opinions, orders, and judgment, bears the legend "FILED UNDER SEAL". As far as we can tell, the district court has kept not only the details but also the existence of this case from public view. The briefs and other papers the parties have filed in this court are similarly designated "UNDER SEAL", and the parties evidently anticipated that secrecy would continue. But appellate proceedings may be sealed only by order of this court (which neither side sought), so we directed the parties to show cause why the briefs and other papers should not be placed in the public record. The Leavells asked

us to unseal everything. Unocal responded by asking us not only to seal the briefs and record but also to hold the oral argument in a courtroom closed to the public and to use only pseudonyms in any opinion. We denied the latter requests before argument, see New York Times Co. v. United States, 403 U.S. 944 (1971) (denying a motion to close even a portion of the argument in the Pentagon Papers case); Coe v. Cook County, 162 F.3d 491 (7th Cir. 1998) (discussing the presumptive inappropriateness of anonymity in litigation), but took under advisement the request to seal the briefs and record.

   The district judge did not explain his sealing order. Unocal's proffered justification is that the parties agreed to keep their settlement confidential, and that "Unocal should not be forced to sacrifice that benefit of the bargain . . . simply because [the Leavells] have breached other portions of the settlement agreement." If indeed the Leavells' intransigence leads to publicity, then Unocal may be entitled to damages for any ensuing harm, but the parties' confidentiality agreement can not require a court to hide a whole case from view. Litigation about trade secrets regularly is conducted in public; the district court seals only the secrets (and writes an opinion omitting secret details); no one would dream of saying that every dispute about trade secrets must be litigated in private. Even disputes about claims of national security are litigated in the open. Briefs in the Pentagon Papers case, New York Times Co. v. United States, 403 U.S. 713 (1971), and the hydrogen bomb plans case, United States v. Progressive, Inc., 467 F. Supp. 990, rehearing denied, 486 F. Supp. 5 (W.D. Wis.), appeal dismissed, 610 F.2d 819 (7th Cir. 1979), were available to the press, although sealed appendices discussed in detail the documents for which protection was sought. See also In re United States, 872 F.2d 472 (D.C. Cir. 1989) (a national security case with public briefs and opinions, although parts of one opinion were redacted to protect confidences).

   Calling a settlement confidential does not make it a trade secret, any more than calling an executive's salary confidential would require a judge to close proceedings if a dispute erupted about payment (or termination). Many a litigant would prefer that the subject of the case--how much it agreed to pay for the construction of a pipeline, how many tons of coal its plant uses per day, and so on--be kept from the curious (including its business rivals and customers), but the tradition that litigation is open to the public is of very long standing. See Nixon v. Warner Communications, Inc., 435 U.S. 589, 597-99 (1978); In re Reporters Committee for Freedom of

the Press, 773 F.2d 1325, 1331-33 (D.C. Cir. 1985) (Scalia, J.). People who want secrecy should opt for arbitration. When they call on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials. Judicial proceedings are public rather than private property, U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18, 27-29 (1994); In re Memorial Hospital of Iowa County, Inc., 862 F.2d 1299, 1302-03 (7th Cir. 1988), and the third-party effects that justify the subsidy of the judicial system also justify making records and decisions as open as possible. What happens in the halls of government is presumptively public business. Judges deliberate in private but issue public decisions after public arguments based on public records. The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compelling justification.

This is not the first time we have encountered requests to seal proceedings in order to implement the parties' preference for seclusion. The requests have been uniformly rejected. See, e.g., United States v. Ladd, No. 99-2301 (7th Cir. June 27, 2000); Citizens First National Bank v. Cincinnati Insurance Co., 178 F.3d 943 (7th Cir. 1999); Pepsico, Inc. v. Redmond, 46 F.3d 29 (7th Cir. 1995) (chambers opinion); Grove Fresh Distributors, Inc. v. Everfresh Juice Co., 24 F.3d 893 (7th Cir. 1994); In re Krynicki, 983 F.2d 74 (7th Cir. 1992) (chambers opinion); In re Continental Illinois Securities Litigation, 732 F.2d 1302 (7th Cir. 1984). Ever since Continental Illinois, we have insisted that only genuine trade secrets, or information within the scope of a requirement such as Fed. R. Crim. P. 6(e)(2) ("matters occurring before the grand jury"), may be held in long-term confidence. Portions of discovery may be conducted in private to expedite disclosure. See Seattle Times Co. v. Rhinehart, 467 U.S. 20 (1984). Much of what passes between the parties remains out of public sight because discovery materials are not filed with the court. But most portions of discovery that are filed and form the basis of judicial action must eventually be released, id. at 36-37--and it should go without saying that the judge's opinions and orders belong in the public domain. Both litigants and judges may protect properly confidential matters by using sealed appendices to briefs and opinions.

At oral argument Unocal conceded that none of the documents sealed in this case meets the standards of Citizens First National Bank and its

predecessors. Accordingly, we direct the clerk of this court to place all appellate papers in the public record. On remand, the district court must do the same, dissolving any confidentiality orders entered in the case. After unsealing the record, the district judge should dismiss the third-party action and promptly determine whether the Leavells are in contempt of court.

Affirmed and Remanded