In the
United States Court of Appeals
For the Seventh Circuit

No. 01-3202

Siegfried Herrnreiter,

Plaintiff-Appellant,

v.

Chicago Housing Authority,

Defendant-Appellee.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 98 C 5209--Rebecca R. Pallmeyer, Judge.

Submitted January 18, 2002--Decided February 13, 2002

   Before Easterbrook, Manion, and Rovner,
Circuit Judges.

   Easterbrook, Circuit Judge.  A district
judge granted summary judgment to the
Chicago Housing Authority, the defendant
in this employment-discrimination suit,
see 2001 U.S. Dist. Lexis 11071 (N.D. Ill.
July 30, 2001), and the plaintiff
appealed. This court's Settlement
Conference Office invited the parties to
try to resolve their differences, and at
a meeting hosted by one of our settlement
attorneys the parties reached an oral
agreement. Unfortunately, they do not
agree on the contents of this agreement,
and we must decide the consequences.

   Both sides agree that Herrnreiter
undertook to dismiss the appeal and sign
a release, in exchange for which the cha
would pay a sum of money within 21 days.
They also agreed that their deal would
remain confidential--but they disagree
about what "confidential" means.
According to Herrnreiter, this means only
that he cannot disclose how much the cha
paid. He believes that he is entitled to
tell the world that a monetary settlement
occurred. According to the cha, it means
that Herrnreiter is obliged to say
precisely (and only) these words if
anyone inquires: "all such matters have
been resolved amicably and to the
satisfaction of all concerned." Behind

the disagreement about the meaning of confidentiality is a disagreement about how the agreement would be concluded. According to the cha, the agreement was binding when the parties shook hands, and the subsequent writings (including the cha's language with respect to confidentiality) just memorialized that agreement. According to Herrnreiter, the agreement was to become binding only when the parties signed a mutually satisfactory written contract. The cha's version of the oral agreement puts it in the driver's seat, for it was free to draft the confidentiality clause (and related terms) to its own satisfaction, and Herrnreiter lacked any power to disagree in an effort to achieve something more favorable.

We have been asked by the cha to "implement" its version of the settlement by dismissing Herrnreiter's appeal. For his part, Herrnreiter contends that he need not dismiss the appeal until the cha relents on the confidentiality provision (after which he would sign the settlement agreement), and that if he does not file a notice under Fed. R. App. P. 42(b) then the court must proceed to decide the case on the merits. It is not clear to us that much turns on this dispute, for by asking us to enforce the agreement the cha has relinquished any claim to confidentiality.

A settlement agreement is a contract, and when parties to a contract ask a court to interpret and enforce their agreement, the contract enters the record of the case and thus becomes available to the public, unless it contains information such as trade secrets that may legitimately be kept confidential. See Union Oil Co. v. Leavell, 220 F.3d 562, 567-68 (7th Cir. 2000); Jessup v. Luther, No. 01-1523 (7th Cir. Jan. 17, 2002). The cha's desire to keep the amount of its payment quiet (perhaps to avoid looking like an easy mark, and thus drawing more suits) is not nearly on a par with national security and trade secret information. Now that the agreement itself has become a subject of litigation, it must be opened to the public just like other information (such as the wages paid to an employee, or the price for an architect's services) that becomes the subject of litigation. So we held in Union Oil v. Leavell--with the

proviso, equally applicable here, that if initiating litigation about the agreement (or causing such litigation to be initiated) amounts to a breach of the confidentiality clause, then any party who can demonstrate damages because of the disclosure may obtain them in a separate action. Thus the request to seal the cha's draft agreement and the appellate papers is denied. Everything that has been filed in this court will be placed in the public record.

Although this may lead Herrnreiter to dismiss his appeal and take the money, we add for completeness that the motion to implement the settlement must be denied. A court of appeals has the authority to implement a settlement reached while the case is on appeal. See Fed. R. App. P. 33. But first the court must know the settlement's terms. When the parties do not agree on what their deal entails, an appellate court is placed in an untenable position. In a district court, a judicial officer oversees any negotiations, and an oral agreement may be put on the record before a court reporter. If the parties fail to preserve their agreement in this way, the district judge or magistrate judge may remember the terms and thus readily enforce the agreement. See Lynch, Inc. v. SamataMason Inc., No. 00-1491 (7th Cir. Jan. 29, 2002). The settlement process in this court, by contrast, does not occur before a judicial officer; it is handled by a settlement conference attorney under a promise to both sides that what occurs during the negotiations will not be revealed to the judges. The conference is never transcribed. A motion to implement a settlement easily could be a strategy to pierce the confidentiality of the negotiations and inform the judges of the parties' positions, rather than to carry out an agreement actually reached. Even if it were appropriate to open the negotiations to the court by, for example, taking the testimony of a settlement attorney, a court of appeals lacks factfinding apparatus. What happens if the recollections of the three participants (the two litigants plus the settlement conference attorney) differ? Perhaps we could appoint a special master to take testimony and propose a resolution, but using a master in this fashion (followed by review by three appellate judges) would dissipate any savings from appellate settlement.

A simple rule is the best rule: An appeal continues until either (a) the litigants sign a mutually satisfactory written agreement that entails the dismissal of the appeal under Rule 42(b), or (b) the appellant actually files a notice of dismissal under Rule 42(b). If a written agreement calling for dismissal of the appeal is reached, but the appellant refuses to carry out that promise, then the court will implement the agreement under Rule 33 by dismissing the appeal. Any other approach would compromise the confidentiality of the negotiations, require the settlement attorneys to become witnesses in appellate factfinding proceedings, and substantially complicate the disposition of litigation.

To say that the appeal is live is to foreclose specific performance, not necessarily to preclude a suit for damages on an oral agreement. As we observed in Lynch, oral settlement agreements are enforceable (subject to the statute of frauds) and may form the basis for recovery--but because settlement agreements are contracts, and thus governed by state law, those suits must occur in state court unless the parties are of diverse citizenship and the stakes exceed $75,000. See Kokkonen v. Guardian Life Insurance Co., 511 U.S. 375 (1994). (In principle, a settlement agreement could be enforced in federal court if the court enters it as a judgment or explicitly retains jurisdiction to enforce the agreement. But this court does neither; an appellate settlement leads to the dismissal of the appeal, not to a judgment incorporating the settlement's terms. Cf. U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18 (1994).)

The cha's motion to implement the settlement by dismissing the appeal is denied. The motion to file documents under seal is denied, and all of the appellate papers will be placed in the public record. Because this opinion adopts a rule of practice for the circuit, it was circulated before release under Circuit Rule 40(e). No judge favored a hearing en banc.