NORTHWEST ENVIRONMENT ADVO-CATES; Center for Marine Conservation; San Francisco Baykeeper, Plaintiffs–Appellees,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY, Defendant–Appellant.

No. 02–15826.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 12, 2002.

Filed Aug. 19, 2003.

As Amended Sept. 15, 2003.

Thomas L. Sansonetti, Assistant Attorney General, Environment and Natural Resources Division, Department of Justice, Washington, DC, for The United States.

Nina Bell, Executive Director, Northwest Environmental Advocates, Linda Sheehan, Pacific Regional Director, The Ocean Conservancy, Leo O'Brien, Executive Director, San Francisco Baykeeper, for plaintiffs-appellees.

Before: KOZINSKI and KLEINFELD, Circuit Judges, and BEISTLINE,* District Judge.

Order; Concurrence by Judge BEISTINE; Dissent by Judge KLEINFELD.

## ORDER

On September 17, 2002, the parties were referred to the Ninth Circuit Mediation Program to explore a settlement. After extensive discussions, they reached a settlement. The parties's joint motion to enter the attached stipulated consent decree is GRANTED. Submission of this case is deferred pending further order of this court. In the event that the matter has not been dismissed according to the timetable laid out in the consent decree, the parties shall file a status report on this case by September 12, 2003.

BEISTLINE, District Judge, concurring.

Judge Kleinfeld's dissent to the proposed consent decree is well reasoned and quite thorough. The issues he raises are significant and should be considered seriously by the parties as they continue their negotiations. There is certainly no assurance how the court would rule on the questions of first impression presented here nor is there any reason to believe that the Court would approve a final resolution that appeared on its face to be unfair or collusive or that failed to consider input from interested parties.

In the present case however the Court referred the parties to mediation and the parties have gone to great efforts to resolve the issues without further litigation. Whether they will ultimately succeed is uncertain for their challenge is not easy. In my view a delay to afford the parties more time to address their differences in this very unique situation will not lead to significant prejudice to either side and should not be viewed as a new procedure that the Court is inclined to follow in the future.

KLEINFELD, Circuit Judge, dissenting.

I respectfully dissent.

The parties do not need an equitable decree from us to accomplish the legitimate objective of dismissing this appeal after having worked out a satisfactory settlement privately. Under Federal Rule of Appellate Procedure 42(b), appeals are ordinarily dismissed by a "signed dismissal agreement specifying how costs are to be paid." [1]

* The Honorable Ralph R. Beistline, United States District Judge for the District of Alaska, sitting by designation.

1. *See* Fed. R.App. P. 42. *See also Herrnreiter v. Chicago Housing Authority*, 281 F.3d 634, 637 (7th Cir.2002).

It is far from certain that we have authority to issue an equitable decree, as opposed to a simple order of dismissal. Rule 42 says that an appeal "may be dismissed on the appellant's motion on terms agreed to by the parties or fixed by the court,"[2] which may provide authority, but the question is not beyond argument. My objection is not that an appellate court lacks the power to enforce settlements between the parties by issuing consent decrees (though I do not concede that we have this power), but whether doing so in the manner outlined below is the prudent exercise of our power.

Unlike a district court, we do not try cases, we do not hold evidentiary hearings, and we do not make findings of fact. Our lack of fact-finding ability makes us unsuitable to enforcement of a consent decree. Also, consent decrees often enmesh the issuing court in management for many years, with new parties joining those already at the table, and the court working out terms consistent with those in some prior judicial decision. Not only are we ill-equipped for this sort of management, but we have not issued any overarching judicial decision that would establish controlling principles. There is thus no authoritative basis for determining who ought to be allowed to join, or what future terms should be accepted or rejected.

Moreover, since we are the relevant appellate court, we shall in effect be denying aggrieved parties any right to appeal. Aside from the virtue of the district court's fact-finding ability, a district court acts with all parties looking over their shoulders at the appellate court, in case it may reject what the parties and the court agree

upon. But there is no court with appellate jurisdiction over us. The rarely exercised certiorari jurisdiction of the Supreme Court is not an adequate substitute for an appeal as of right.

The best authority for an appellate court having the power to issue a consent decree is Federal Rule of Appellate Procedure 33. It provides that "the court may, as a result of the conference, enter an order controlling the course of the proceedings or implementing any settlement agreement."[3] The word in that rule critical to this case is "may." It is generally imprudent to exercise all the power we may have, or to test the limits of our power, and it is highly imprudent in this case. Moreover, when Rule 33 was amended, the committee expressly did so in light of the well established practices of the circuit courts "aimed at keeping the judges distanced from the process."[4] The only way we can keep ourselves "distanced" is by empowering a permanent master or our settlement office to exercise the very considerable power the decree gives the court. We, however, are not distanced when the parties see if we are willing to issue a consent decree and then provide the terms for our approval. The parties in this case should have just settled the case among themselves and filed a joint motion to dismiss the appeal. If problems arose later they could take them to the district court.

The underlying issues in this case are serious, and seriously disputed. The environmental advocacy group sued the EPA to compel it to act on their suggestion that NPDES permits should be required for ships that dump bilge into public waterways. There is a serious question of

---

2. Fed. R.App. P. 42.

3. Fed. R.App. P. 33.

4. Committee Notes on Proposed Changes to Rule 33, Federal Rules Decisions Effective

December 1, 1994, FEDERAL RULES OF APPELLATE PROCEDURE, 154 F.R.D. 329, 366 (Apr. 29, 1994) (rejecting a proposed amendment that would have made it appear that appellate courts were directly involved in the mediation and settlement process).

whether the Act to Prevent Pollution From Ships [5] or the National Invasive Species Act [6] preempt the advocacy group's position with regard to what the Clean Water Act requires. Another serious issue this case presents is whether this matter is within the jurisdiction of the EPA or the Coast Guard. Indeed, the parties even dispute whether the district court had jurisdiction in this case or whether we should have original jurisdiction over this matter. And there is yet another serious issue of whether the statute requiring the EPA to respond without unreasonable delay to the advocacy group's petition to repeal the administrative regulation at issue applies in the case at bar.

This is not the straightforward case where the agency has acted, and an advocacy group challenges the action. This is a case where the agency has not acted, and the advocacy group is using the courts to force this matter, perhaps to the exclusion of others that the agency has deemed of a higher priority, onto the agency's agenda. The consent decree requires the EPA to decide the question before it—its duty under NEPA and the APA—though not to decide it in a particular way. The decree, however, imposes a timetable on the agency that could short-circuit the agency's normal agenda and the normal functioning of the political process.

This concern over forcing the political process to act on a judicial timetable highlights yet another prudential reason why we should not gallop into the middle of this settlement. There are two classes of nonparticipants to the settlement, who may be critical to a fair and sound resolution. First are the individuals and firms that discharge bilge. Their legitimate safety and economic concerns will not be represented by anyone at the table, and we certainly have no expertise that would enable us to substitute ourselves for their advocates. The second class of nonparticipants is the other agencies, such as the Coast Guard, that may have statutory authority or duty to control the discharge of bilge and to deal with maritime safety concerns relating to bilge. Yet we will not hear from them, even though they may have a serious interest in this litigation. Even if those classes get in, they will be confronted with a judicially enforceable fait accompli.

Though I do not intimate that it is so in this case, consent decrees between advocacy groups and agencies present a risk of collusion to avoid executive and ultimately democratic control over the agencies. An agency that cannot get its agenda approved within the executive branch can get itself sued and consent to a judicial decree commanding it to do what it wants to do. We should avoid enmeshing ourselves in a process that lends itself to such evasion of the democratic process, should preserve our ability to serve in an appellate adjudicative capacity.

In the only published and at all analogous Rule 33 case, *Herrnreiter v. Chicago Housing Authority,* the Seventh Circuit issued a prudential denial of an enforcement order.[7] And that case was much simpler, apparently a routine employment discrimination case in which the only dispute was about how much the agency could keep secret. *Herrnreiter* says that "in principle, a settlement agreement could be enforced in federal court if the court enters it as a judgment or retains jurisdiction to enforce the agreement. But this court does neither; an appellate settlement leads to the dismissal of the appeal, not to a judgment incorporating the settlement's terms." [8]

---

**5.** *See* 33 U.S.C. § 1901 et. seq.

**6.** *See* 16 U.S.C. § 4701 et. seq.

**7.** *See Herrnreiter,* 281 F.3d at 637.

**8.** *Id.* at 638.

In this case, by contrast, the majority is *not* dismissing the appeal. Instead, we are retaining the case indefinitely and assuming responsibility for enforcing the decree. All that will be done at this time is the transfer of a substantial amount of money from the EPA to the environmental advocacy group that brought the case. The rest will go on, under our supervision.

Either we should have adjudicated the case, or the parties should have settled it. It is imprudent for us to assume the role of a chancellor to enforce the decree in our discretion as guided by the parties as time goes on.

## STIPULATED CONSENT DECREE

WHEREAS plaintiffs Northwest Environmental Advocates, The Ocean Conservancy (formerly Center for Marine Conservation), and San Francisco Baykeeper (collectively "NWEA") filed the complaint for declaratory and injunctive relief (hereinafter "complaint") in this action on April 2, 2001, against defendant United States Environmental Protection Agency ("EPA") (NWEA and EPA will be referred to together as "the parties");

WHEREAS NWEA seeks in its complaint a declaration pursuant to section 706(1) of the Administrative Procedure Act, 5 U.S.C. § 706(1) that EPA has unreasonably delayed responding to a petition filed by NWEA on January 13, 1999, requesting EPA to repeal a regulation, found at 40 C.F.R. 122.3(a), promulgated under the Clean Water Act ("NWEA's petition" or "the petition"), and an injunction ordering EPA to respond to the petition;

WHEREAS NWEA's complaint also seeks an award of costs and attorneys fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412;

WHEREAS on January 30, 2002, the district court granted the plaintiffs' motion for summary judgment and ordered EPA to respond to NWEA's petition within 30 days;

WHEREAS on February 20, 2002, EPA filed a motion for reconsideration in which it raised for the first time the issue of whether the district court had jurisdiction over this case;

WHEREAS the motion for reconsideration was denied by the district court on April 24, 2002;

WHEREAS EPA obtained a stay of the district court's order from this Court on May 2, 2002; WHEREAS the case has been fully briefed and argued in this Court, but submission of the case for decision has been stayed pending mediation;

WHEREAS the parties have jointly presented the important points of this Agreement to the District Court, which has orally indicated that it did not find the proposal objectionable, including the parties' proposal that, on completion of performance of the consent decree, it would vacate its prior orders of January 30, 2002 and April 24, 2002, on the merits of the case;

WHEREAS in resolution of the fundamental issue of agency delay presented by NWEA's complaint, EPA will respond to NWEA's petition on or before September 2, 2003;

WHEREAS it is in the interest of the public, the parties, and judicial economy to resolve this claim without further litigation;

WHEREAS NWEA and EPA have agreed to enter this Consent Decree without any admission or adjudication of any issue of fact, law, liability or remedy;

WHEREAS this settlement resolves all claims in this case and the parties believe that it represents a just, fair, adequate and equitable resolution of the claims resolved herein;

NOW THEREFORE, it is hereby OR-DERED, ADJUDGED, AND DECREED that:

1. EPA shall, on or before September 2, 2003, grant, deny, or grant in part and deny any remaining part of NWEA's petition.

2. The date on which EPA is to respond to plaintiffs' petition as set forth in paragraph 1 may be modified either (a) by the parties, consented to in writing, with subsequent notice to the Court, or (b) by the Court, following motion of any party to this Consent Decree demonstrating good cause for the modification. As used in this paragraph, the term "good cause" shall reflect the fact that the fundamental basis of NWEA's underlying claims in this case and the resolution of those claims through the terms of this consent decree involve solely issues of alleged agency delay in responding to the petition. Good cause includes, but is not limited to, changes in the law precluding EPA from complying with its obligations under this Decree. The Parties reserve any rights they may have to challenge any request for modification of this Decree.

3. The obligations imposed upon EPA under this Decree are subject to the availability of appropriated funds. No provision of this Decree shall be interpreted as or constitute a commitment or requirement that EPA obligate or pay funds in contravention of the Anti Deficiency Act, 31 U.S.C. § 1341, or any other applicable law or regulation.

4. Nothing in the terms of this Decree shall be construed to limit or modify the discretion accorded EPA by the Clean Water Act or by general principles of administrative law.

5. Nothing in the terms of this Decree shall be construed to confer upon the Court of Appeals jurisdiction to review any decision, either procedural or substantive, to be made by EPA pursuant to this De-cree, except for the purpose of determining EPA's compliance with this Decree.

6. EPA agrees that NWEA is entitled to and that it will pay NWEA its reasonable attorneys fees and costs pursuant to EAJA. Those fees shall be paid in the amount of $88,901.69 within 60 days following entry of this Decree by this Court.

7. This Court shall retain jurisdiction over this matter for the duration of this Decree in order to allow the parties to apply to this Court for the purpose of implementing or enforcing compliance with the terms and conditions set forth in this Decree.

8. The obligations of this Decree and this Court's jurisdiction over this Decree shall terminate upon the completion of all requirements of this Decree. Once EPA notifies NWEA that EPA's obligations under Paragraphs 1 and 6 have been fulfilled, NWEA shall have 14 days thereafter to respond to EPA. If NWEA agrees that EPA has fulfilled its obligations under Paragraphs 1 and 6, the parties shall file a joint motion with the District Court to vacate its decisions of January 30 and April 24, 2002, and so notify this Court. In addition, NWEA will file a motion with the District Court to dismiss NWEA's complaint with prejudice. If NWEA does not agree that EPA has fulfilled its obligations under Paragraphs 1 and 6, NWEA will file a motion with this Court to compel compliance with the terms of this Decree. EPA may file a response to NWEA's motion within 14 days of such motion. In the event that NWEA does not timely respond to the EPA's notice of compliance as provided by this paragraph, EPA may file motions, and NWEA will not oppose, with the District Court to vacate its decisions and to dismiss the complaint with prejudice, and so notify this Court.

9. Upon approval and entry of this Consent Decree by this Court, the Consent

Decree shall constitute a resolution of all claims asserted by NWEA in its complaint.

10. NWEA hereby releases, discharges, and covenants not to assert (by way of the commencement of an action, the joinder of EPA in an existing action, or in any other fashion) any and all claims, causes of actions, suits or demands of any kind whatsoever, in law or in equity, which NWEA may have against EPA based upon NWEA's claim in its complaint of unreasonable delay pursuant to 5 U.S.C. § 706(1). Nothing in this paragraph shall be construed to limit in any way NWEA's right to seek judicial review of any final action taken by EPA with respect to NWEA's petition, nor shall this paragraph apply to any future judicial review sought by NWEA challenging the legality of 40 C.F.R. 122.3(a) or how that regulation is applied. This paragraph shall not limit EPA's defenses to any such judicial review sought by NWEA nor does it constitute a representation of any kind by EPA regarding the legality or viability of such potential lawsuits.

11. The undersigned representatives of each party certify that they are fully authorized by the party or parties they represent to consent to this Court's entry of this Decree.

**SO ORDERED:**