In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-2769

IN THE MATTER OF:

COMMODITY FUTURES TRADING COMMISSION,

*Petitioner.*

KRAFT FOODS GROUP, INC., and MONDELĒZ GLOBAL LLC,

*Parties in Interest.*

Petition for a Writ of Mandamus to the United States
District Court for the Northern District of Illinois, Eastern Division.
No. 15 C 2881 — **John Robert Blakey**, *Judge.*

SUBMITTED OCTOBER 15, 2019 — DECIDED OCTOBER 22, 2019

Before EASTERBROOK, RIPPLE, and SYKES, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* In 2015 the Commodity Futures Trading Commission filed a civil action against Kraft Foods Group and Mondelēz Global. It was settled in August 2019, and the parties' bargain, which the judge entered as a consent decree, includes this provision:

Neither party shall make any public statement about this case other than to refer to the terms of this settlement agreement or public documents filed in this case, except any party may take

any lawful position in any legal proceedings, testimony or by court order.

Shortly after the district court entered its order, the Commission issued a press release announcing the suit's resolution. Two Commissioners (Dan Berkovitz and Rostin Behnam) filed statements explaining why they voted in favor of accepting this settlement.

Kraft and Mondelēz asked the district judge to hold the Commission and Commissioners in contempt of court for issuing the press release and concurring statements. The district judge set the motion for a hearing and directed Chairman Heath Tarbert, Commissioners Berkovitz and Behnam, the Commission's Director of Enforcement, and several of the Commission's other employees to appear in court and testify under oath. The judge stated that he would administer *Miranda* warnings to these witnesses in preparation for a finding of criminal contempt and would demand that the witnesses explain the thinking behind the press release and the separate statements. Chairman Tarbert and the Commissioners protested. After a motion asking the district court to lift the demand for their presence and the threat of criminal sanctions went unaddressed for approximately two weeks, and the date scheduled for the hearing approached, the Commission filed a petition for a writ of mandamus. A motions panel issued a stay pending further order of this court.

We also ordered all of the papers to be placed in the public record. The district judge had directed the parties not to say anything in public about the upcoming hearing and to keep all of their legal filings secret, an order that is inconsistent with the law of this circuit. See, e.g., *Union Oil Co. v. Leavell*, 220 F.3d 562, 567–68 (7th Cir. 2000); *Herrnreiter v. Chi-*

*cago Housing Authority*, 281 F.3d 634, 636–37 (7th Cir. 2002). Those two decisions hold that a confidentiality clause in the litigants' agreement does not authorize secret adjudication.

We ordered Kraft and Mondelēz to respond to the petition and invited the district judge to do so. See Fed. R. App. P. 21(b)(1), (4). The district judge's response states, among other things, that he no longer contemplates the possibility of criminal contempt, so that aspect of the controversy has dropped out. Everything we say from now on concerns civil contempt only.

Chairman Tarbert and Commissioners Berkovitz and Behnam have moved for leave to intervene. We grant that motion. Although the Commission is representing their interests adequately for the present, the threat of being personally penalized for contempt of court entitles them to be litigants in their own right, so that they may take such steps as they deem wise to protect their personal interests.

Mandamus is a drastic remedy, reserved for urgent needs, but, for all that, it remains available to a litigant who can establish a clear right to relief and lacks any other way to protect his or her rights. See, e.g., *Cheney v. United States District Court*, 542 U.S. 367 (2004); *Ex parte Fahey*, 332 U.S. 258 (1947).

The district court's order directing the Chairman and two members of the Commission, plus members of the staff, to appear for questioning in open court cannot be reviewed on appeal from a final decision. The time taken away from their official duties will be lost forever.

*Cheney* holds that mandamus is the appropriate remedy when a district court has authorized an inquest into the in-

ternal deliberations of the Executive Branch's senior officials.
See also, e.g., *In re United States*, 398 F.3d 615 (7th Cir. 2005).
That's a good description of the order requiring the Chair-
man and two Commissioners, appointed by the President on
advice and consent of the Senate, to appear and reveal what
lies behind their published words. Many decisions hold that
mandamus is appropriate when a district judge inappropri-
ately compels a ranking federal official to appear personally
rather than by counsel. See, e.g., *In re United States*, 624 F.3d
1368, 1372 (11th Cir. 2010); *In re Cheney*, 544 F.3d 311, 314
(D.C. Cir. 2008); *In re United States*, 197 F.3d 310, 313–14 (8th
Cir. 1999); *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995); *In re
United States*, 985 F.2d 510, 512 (11th Cir. 1993); *United States
Board of Parole v. Merhige*, 487 F.2d 25, 29 (4th Cir. 1973).

The district court's order requiring the Chairman, Com-
missioners, and members of the staff to appear for question-
ing might be supportable on two grounds: first, that they po-
tentially could be held in contempt; second, that their testi-
mony is essential to determine whether the Commission is in
contempt. Neither of these potential justifications suffices.

We start with the possibility that the persons compelled
to appear may themselves be in contempt. They are not par-
ties to the agreement and consent decree, so the only basis
for adjudicating them in contempt would be Fed. R. Civ. P.
65(d)(2)(B), which says that "the parties' officers, agents,
servants, employees, and attorneys" are bound by an injunc-
tion. But that clause would control only if the Commission
has the authority to bind its members, and it does not.

> Whenever the Commission issues for official publication any
> opinion, release, rule, order, interpretation, or other determina-
> tion on a matter, the Commission shall provide that any dissent-
> ing, concurring, or separate opinion by any Commissioner on

> the matter be published in full along with the Commission opin-
> ion, release, rule, order, interpretation, or determination.

7 U.S.C. §2(a)(10)(C). In other words, every member of the Commission has a right to publish an explanation of his or her vote.

This is a right that the Commission cannot negate. It could not vote, three to two, to block the two from publishing their views. So if we understand the consent decree as an effort to silence individual members of the Commission, it is ineffectual, for no litigant may accomplish through a consent decree something it lacks the power to accomplish directly, unless some other statute grants that power—and no one argues that any other statute overrides §2(a)(10)(C). See *Dunn v. Carey*, 808 F.2d 555 (7th Cir. 1986); *Kasper v. Board of Election Commissioners*, 814 F.2d 332, rehearing denied, 814 F.2d 345 (7th Cir. 1987); *People Who Care v. Rockford Board of Education*, 961 F.2d 1335, rehearing denied, 964 F.2d 639 (7th Cir. 1992); *Paige v. Cisneros*, 91 F.3d 40 (7th Cir. 1996). And because members of federal agencies are entitled to the assistance of their staffs, a statute entitling the Commissioners to speak their minds also means that it would be inappropriate to penalize persons who helped them do it.

Now consider the possibility that testimony from the Chairman, Commissioners, and staff members is essential to decide whether the Commission as an institution is in contempt. The district judge apparently believed that only evidence about a litigant's thoughts and goals supports an adjudication in contempt, and who other than the Chairman and Commissioners could provide that evidence? But the Supreme Court has held that disputes about civil contempt must be resolved objectively. See, e.g., *Taggart v. Lorenzen*,

139 S. Ct. 1795, 1804 (2019). The agreement, consent decree, and press release are written documents; their meaning and effect depends on their four corners. See, e.g., *United States v. ITT Continental Baking Co.*, 420 U.S. 223 (1975). If the Commission has done wrong, that is because of what the Commission itself said and did, not because of what any of its members or employees thought or planned. See, e.g., *In re United States*, 398 F.3d at 618.

Judicial review of an agency's decision is limited to the agency's official acts and the administrative record in all but the most extraordinary situations. *United States v. Morgan*, 313 U.S. 409, 422 (1941). One important reason for that rule is that intra-agency deliberations are covered by multiple privileges, as *Cheney* and other decisions explain. Although these privileges may be overridden for compelling reasons, no such reason has been established or even asserted here.

Because the propriety of the Commission's official deeds depends on those deeds, plus the administrative record (if any), there is neither need nor justification for testimony by the Chairman, any Commissioners, or any members of the agency's staff. We issue a writ of mandamus and direct the district court to withdraw its demand that these persons appear in court for questioning. We also direct the district court to desist from any effort to hold the Chairman, Commissioners, and staff members personally in contempt of court, or otherwise to look behind the Commission's public statements and the administrative record.

The Commission has asked us to go further and order the district court to close the contempt proceeding. Kraft and Mondelēz contend that four statements in the Commission's press release violate the consent decree:

- "The $16 million penalty is approximately three times defendants' alleged gain.

- "We are pleased to bring this matter to a successful resolution, which terminates more than four years of litigation.

- "The Commission believes that the Consent Order advances our mission of fostering open, transparent, and competitive markets.

- "We do not expect the Commission to agree to similar language in the future, except in limited situations where our statutory enforcement mission of preventing market manipulation is substantially advanced by the settlement terms and the public's right to know about Commission actions is not impaired."

The Commission asserts that none of these statements violates the confidentiality clause of the agreement.

The argument for mandamus on this subject is weak. If the district judge ultimately concludes that the Commission is indeed in contempt, its arguments can be vindicated by an appeal in the regular course. We therefore deny the request for mandamus on this issue. Likewise we deny the Commission's request that we transfer the district court's proceedings to a different judge. The judge who entered the consent decree is in the best position to decide, as an initial matter, whether its provisions have been violated. The final decision will be subject to plenary review.

The motion to intervene is granted. The petition for mandamus is granted to the extent we indicated above and otherwise denied.