In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1464

STATE FARM LIFE INSURANCE COMPANY,

*Plaintiff-Appellee,*

*v.*

TROY JONAS, *et al.,*

*Defendants-Appellants.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:12-cv-1500-WTL-MJD — **William T. Lawrence**, *Judge.*

ARGUED DECEMBER 5, 2014 — DECIDED DECEMBER 31, 2014

Before FLAUM, EASTERBROOK, and KANNE, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Troy Jonas and his wife Jennifer purchased reciprocal policies of life insurance: she owned the policy on her life, with him as beneficiary; he owned the policy on his life, with her as beneficiary. When they divorced in 2011, the court reassigned the policies' ownership: after the divorce, Troy owned the policy on Jennifer's life. Each policy provided that "[a] change of Owner or Successor Owner does not change the Beneficiary Desig-

nation." Troy therefore thought it unnecessary to redesignate himself as the beneficiary of the policy insuring Jennifer's life.

Jennifer died on August 30, 2012. Troy promptly submitted a claim for the proceeds ($1 million). State Farm Life Insurance did not pay. It expressed concern that the proceeds might belong to the couple's children (who had been named as secondary beneficiaries) or to Jennifer's estate as a result of Tex. Family Code §9.301, which provides that if a divorce occurs after one spouse has designated the other spouse as a beneficiary of an insurance policy, the designation lapses (with some exceptions) and, unless a new designation is made, the proceeds belong to any alternative beneficiary or the decedent's estate. (Jennifer was domiciled in Texas when she died, and the policy had been issued there; the parties agree that Texas law applies to this litigation.) Troy replied that this provision does not apply when the divorce decree reassigns the policy's ownership to the named beneficiary.

Texas law requires an insurer to pay within 60 days of receiving a claim, Tex. Ins. Code §542.058(a), and provides for "damages" if payment is delayed. Damages under Tex. Ins. Code §542.060 are interest at 18% a year plus reasonable attorneys' fees that the claimant incurs in collecting. But an insurer that receives "notice of an adverse, bona fide claim" within 60 days of the initial claim may defer payment and

> properly file an interpleader action and tender the benefits into the registry of the court not later than the 90th day after the date the insurer receives [the initial claim]. A life insurer that delays payment of the claim or the filing of an interpleader and tender of policy proceeds for more than 90 days shall pay damages and other items as provided by Section 542.060 until the claim is paid or an interpleader is properly filed.

Tex. Ins. Code §542.058(c). One final provision of Texas law plays a role in this federal litigation. Tex. Ins. Code §1103.103 provides that if an insurer does not receive a competing claim before it pays the policy's designated beneficiary, it is absolved of any liability to a later claimant, whether or not the belated claimant had a superior entitlement to the proceeds. See also *State Farm Life Insurance Co. v. Martinez*, 216 S.W.3d 799, 806 n.31 (Tex. 2007).

State Farm did not receive any claim other than Troy's. Still, it did not pay. Instead it filed this action in federal court, nominally as an interpleader under 28 U.S.C. §1335, on October 16, 2012—before the 60 days had run, and well inside the 90 days allowed by §542.058(c). But there were two problems, one with Texas law and one with federal law. The problem under Texas law is that State Farm had not received "notice of an adverse, bona fide claim". We'll come back to the problem under federal law.

Troy replied to State Farm's action by asking the district court to award him the proceeds plus 18% interest and attorneys' fees. He contended that the suit was unnecessary (State Farm not having received an adverse claim) and that delay in payment contravened Texas law. The district court disagreed. Relying on *Clements v. Minnesota Life Insurance Co.*, 176 S.W.3d 258, 263 (Tex. App. 2004), it treated State Farm's concern about the potential rights of the children (and Jennifer's estate) as equivalent to a bona fide claim adverse to Troy's. That was enough to permit State Farm to commence an interpleader—and since it had done that within 90 days of Troy's claim, Texas law permitted it to use the 2% contractual rate of interest rather than the 18% rate under §542.060. 2013 U.S. Dist. Lᴇxɪs 81720 (S.D. Ind. June 11, 2013),

reconsideration denied, 2013 U.S. Dist. LEXIS 86703 (June 20, 2013). The judge ordered State Farm to remit the proceeds to the court's registry. State Farm complied on June 17, 2013, and the court disbursed the money to Troy on February 6, 2014. (The record does not explain why the court held onto the money for almost eight months.) Troy contends in this appeal that he is entitled to recover his attorneys' fees and that the rate of interest should have been 18% rather than 2%, and should run until he received the money.

This brings us to the federal problem, which has implications under Texas law too. The problem is this: State Farm did not file an interpleader under 28 U.S.C. §1335. It may have thought that it did, but it didn't. Section 1335 creates jurisdiction of interpleader actions if two conditions are met. Subsection (a)(1) specifies minimal diversity among claimants, which was satisfied. (Jennifer was domiciled in Texas on her death, so her estate also has Texas citizenship, 28 U.S.C. §1332(c)(2); Troy and the children were domiciled in Indiana when the suit began.) Subsection (a)(2) requires the deposit of the stakes in the district court's registry. That condition was not satisfied. State Farm filed a complaint but not a check or any other financial instrument. Both parts are jurisdictional. Section 1335(a) reads: "The district courts shall have original jurisdiction … if (1) … and if (2) … ." State Farm satisfied (1) but not (2), so §1335 does not provide subject-matter jurisdiction.

The consequence under Texas law is that Ins. Code §542.058(c) drops out of the picture, for it requires an insurer not only to file an interpleader action but also to "tender the benefits into the registry of the court not later than the 90th day after the date the insurer receives [the initial claim]."

Texas may permit interpleader actions in state court based on promises to pay rather than contemporaneous deposits, but federal procedures govern in federal litigation, see *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), and §1335(a)(2) requires cash on the barrelhead. Moreover, whether or not Texas allows an interpleader without a cash deposit, §542.058(c) requires a deposit to avoid damages under §542.060. This means that State Farm cannot use the federal action to defend against Troy's demand for damages under §542.060.

Troy wants us to remand with instructions to calculate and award attorneys' fees and the extra interest. But we can't do that either. A remand with any instruction other than dismissal depends on the existence of subject-matter jurisdiction. Section 1335 does not supply jurisdiction.

Section 1332, the general diversity statute, also must be considered. Interpleader using the §1332 jurisdiction has been authorized by Fed. R. Civ. P. 22, which does not require a cash deposit. See *Gelfgren v. Republic National Life Insurance Co.*, 680 F.2d 79, 81–82 (9th Cir. 1982); *Murphy v. Travelers Insurance Co.*, 534 F.2d 1155, 1159 (5th Cir. 1976). The lack of a deposit means that §542.058(c) remains unsatisfied, even if we treat this action as a rule interpleader (the parties have not done so; their briefs do not mention Rule 22), but before considering whether we can order any relief, we must address subject-matter jurisdiction. Complete diversity exists (State Farm is incorporated and has its principal place of business in Illinois; the other parties are citizens of Indiana or Texas; the stakes exceed $75,000), but where is the controversy necessary to satisfy Article III of the Constitution?

State Farm acknowledges that it must pay the proceeds (and interest) to *someone*, and Troy is the only claimant. A genuine risk of multiple liability—being ordered to pay Troy plus the children, or Troy plus Jennifer's estate—could provide a justiciable controversy, but Texas law eliminates that risk. Section 1103.103 of the Tex. Ins. Code protects insurers that pay the named beneficiary when no one else makes a competing claim. At oral argument, State Farm's lawyer told us that it was not "comfortable" relying on §1103.103, but it is not the role of a federal court to provide comfort to litigants. Federal courts resolve concrete disputes between real adversaries, and this suit lacks such a controversy. Section 1103.103 means that State Farm has never faced a realistic prospect of multiple liability. Compare *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334 (2014) (a "credible threat" of liability creates a justiciable controversy), with *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (an "imaginary or speculative" risk of liability does not).

Troy takes a different position. He concedes that there was no justiciable controversy when the suit was filed—not even one about the rate of interest, since State Farm filed the suit before the 60th day after his claim, and thus before the rate of interest stepped up from 2% to 18%. But he contends that once the 60th day passed a controversy arose about whether State Farm is liable under §542.060. The problem with that contention is that a case or controversy must exist when a suit begins—and on that date there was no live controversy. If disputes about attorneys' fees and interest *during* the litigation could create a justiciable controversy, then no case could be dismissed for lack of one, if only because the winner of every suit is presumptively entitled to costs under 28 U.S.C. §1920.

Several times the Supreme Court has encountered the contention that a dispute about the allocation of costs, attorneys' fees, or other post-filing expenses justifies adjudication of a suit that is otherwise not within federal jurisdiction. For example, in *Diamond v. Charles*, 476 U.S. 54 (1986), an intervenor who had been ordered to pay the prevailing side's legal fees contended that this kept the controversy alive, even though the only litigants with standing had dropped out, since if the judgment were reversed on the merits the award of fees would fall with it. The Justices held, however, that awards of legal fees and other post-filing procedural events could not supply a case or controversy. 476 U.S. at 68–71. The Court followed up by holding that a litigant cannot sidestep the need for a controversy on the merits by bringing suit for the costs of bringing suit. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107 (1998). See also *Lewis v. Continental Bank Corp.*, 494 U.S. 472 (1990).

When this litigation began, there was no justiciable controversy. The current disputes about the rate of interest and whether State Farm must pay the attorneys' fees that Troy has incurred in this litigation do not retroactively create jurisdiction. Troy must turn to state court in order to seek any further award—though we hope that what we have said in this opinion will enable the parties to settle.

The judgment of the district court is vacated, and the case is remanded with instructions to dismiss for lack of subject-matter jurisdiction.