

**FILED**

Mar 30 2016, 9:17 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

David F. McNamar
McNamar & Associates, P.C.
Indianapolis, Indiana

Guy O. Kornblum
Kornblum, Cochran, Erickson,
Harbison, LLP
San Francisco, California

ATTORNEY FOR APPELLEE

Dennis F. Cantrell
Cantrell Strenski & Mehringer
LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Troy Jonas,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>State Farm Life Insurance<br>Company,<br>*Appellee-Defendant.* | March 30, 2016<br><br>Court of Appeals Case No.<br>29A02-1510-PL-1761<br><br>Appeal from the<br>Hamilton Superior Court<br><br>The Honorable<br>Daniel J. Pfleging, Judge<br><br>Trial Court Cause No.<br>29D02-1504-PL-2825 |

**Kirsch, Judge.**

[1] Troy Jonas ("Jonas") appeals the trial court's order granting summary judgment in favor of State Farm Life Insurance Company ("State Farm"). Jonas raises the following restated issue for our review: whether the trial court erred when it determined that Jonas entered into a settlement agreement with

State Farm and then refused to follow through with the agreement, which constituted a breach of the settlement agreement.

We affirm.

## Facts and Procedural History

In May 2007, Jonas and his then-wife Jennifer Jonas ("Jennifer") purchased reciprocal life insurance policies from State Farm. At that time, Jonas and Jennifer lived in Texas, and the policies were purchased there. Jonas owned the policy on his life with Jennifer as the primary beneficiary, and Jennifer owned the policy on her life with Jonas as the primary beneficiary. The couple's children were the secondary beneficiaries on both policies. Pursuant to the policies, in the event of the death of either Jonas or Jennifer while insured under the policy, State Farm promised to pay death benefits with a face value of $1,000,000.00 to the beneficiary. In pertinent part, Jennifer's policy ("the Policy") provided as follows:

**OWNERSHIP PROVISIONS**

**Owner.** The Owner is as named in the Application, unless changed. You may exercise any policy provision only by Request and while the Insured is alive, subject to the rights of any assignee that we have on record and to the rights of any irrevocably designated Beneficiary. The Successor Owner will become the Owner of this Policy if you die while this Policy is in force.

**Change of Owner/Successor Owner.** You may change the Owner or Successor Owner by Request while the Insured is alive

and this Policy is in force. The change will take effect the date you sign the Request, but the change will not affect any action we have taken before we receive the Request. A change of Owner or Successor Owner does not change the Beneficiary Designation.

**Beneficiary Designation.** This is as shown in the Application, unless you have made a change by Request. . . .

**Change of Beneficiary Designation.** You may make a change by Request while the Insured is alive and while this Policy is in force. The change will take effect the date the Request is signed, but the change will not affect any action we have taken before we receive the Request.

*Appellant's App*. at 16-17; *Appellee's App*. at 145-46. The Policy further stated:

**Method 1 (One Sum Method).** We will pay the Proceeds in one sum. Interest will be paid from the date of the Insured's death to the date of payment. The interest rate will be the greater of 2% a year or the interest rate required by law, if applicable.

*Appellant's App*. at 17; *Appellee's App*. at 146.

[4] On August 9, 2011, Jonas and Jennifer were divorced by a court in Texas. Pursuant to the Final Decree of Divorce ("the Decree"), Jennifer was ordered to transfer ownership of the Policy to Jonas as part of the property distribution and to execute the necessary forms with State Farm within ten days of the Decree to do so. *Appellant's App*. at 19; *Appellee's App*. at 192. Jennifer did not execute the necessary forms with State Farm in compliance with either the Decree or the Policy. Shortly after the divorce was finalized, Jonas and the children moved to Carmel, Indiana.

On August 30, 2012, Jennifer died. On September 4, 2012, Jonas submitted a claim to State Farm for the Policy proceeds. Although State Farm agreed that the beneficiary of the Policy was entitled to the payment of the proceeds, it recognized that there was uncertainty under Texas law concerning how the Decree affected the manner of disbursement and to whom the Policy proceeds were to be paid. Therefore, on October 17, 2012, State Farm filed a "Complaint for Interpleader and Declaratory Relief" with the Southern District Court of Indiana. *Appellee's App*. at 218-22. In that filing, State Farm stated it was willing to remit the Policy proceeds to the Clerk of the District Court and requested the District Court to direct State Farm to do so pending the District Court's determination of the proper distribution of the proceeds to eliminate the risk of multiple liabilities for such payment. *Id*. at 221.

On May 1, 2013, State Farm filed a "Motion to Interplead Funds," seeking an entry of an order authorizing it to interplead the Policy proceeds plus the Policy's contractual interest calculated at 2% from the date of Jennifer's death to the date of the District Court's order "to be held for the benefit of the parties . . . until the Court makes a determination as to how the insurance proceeds shall be disbursed." *Id*. at 224. On June 11, 2013, the District Court issued an "Entry Regarding Pending Motions," in which it granted State Farm's Motion to Interplead Funds, ruling that, because the facts known to State Farm created a reasonable doubt as to who the proper beneficiary of the Policy was, it was proper under Texas law for State Farm to file an interpleader action instead of paying the proceeds to Jonas. Further, the District Court ordered that State

Farm did not have to pay the 18% interest damages under Texas insurance law, as Jonas claimed, but only the 2% as provided under the Policy. *Id*. at 232-33. On June 17, 2013, State Farm deposited the Policy proceeds in the amount of $1,016,216.78 per the District Court's order with the Clerk of the Court.

[7] On October 22, 2013, State Farm filed a motion, seeking to be dismissed from the interpleader action with prejudice after complying with the District Court's order to interplead the Policy proceeds. Jonas filed an objection to this motion, but the District Court granted State Farm's motion and dismissed State Farm with prejudice from the action. In December 2013, Jonas and the guardian ad litem for the children entered into an agreement, in which Jonas agreed to disburse $150,000.00 into an irrevocable trust for the children. In February 2014, after approving the agreement, the District Court entered a final judgment and ordered the Policy proceeds to be disbursed. On March 4, 2014, Jonas filed an appeal with the Seventh Circuit.

[8] On April 15, 2014, State Farm and Jonas reached a verbal settlement agreement to settle all of Jonas's claims for $60,000.00. State Farm sent Jonas's counsel a proposed Final Release Agreement, which included a confidentiality provision. On April 21, 2014, Jonas's counsel sent the following email to State Farm:

> I have emailed the proposed release you sent me both to my client and to Rocco Spagna at the 7th Circuit. I advised him as to our disagreement about the confidentiality clause in this proposed agreement. My client desires me to withdraw our offer to settle and proceed with the appeal. I have asked him to hold off on that until the end of today. He also agrees with me as to

the confidentiality clause. As a result, if we do not have an agreement by the end of business today, we will withdraw our offer to settle for the $60,000.00 and proceed to file our brief with this appeal. The settlement includes the removal of any confidentiality clause in the proposed release that you sent to me. Thank you.

*Appellee's App*. at 254. Later that day, State Farm's counsel responded to the email and stated: "State Farm agrees to remove the confidentiality paragraph." *Id*. A minute later, Jonas's counsel emailed a response and replied: "Fine. When can my client expect to be paid?" *Id*.

[9] On April 28, 2014, State Farm's counsel sent an email to Jonas's counsel, stating, "I received the settlement check from State Farm and I am putting it in the mail to you now. Attached is the Release that we agreed upon. Please have it executed and please file the dismissal pleadings with the 7th Circuit." *Id*. at 256. On April 29, Jonas's counsel emailed a response and informed State Farm that Jonas was withdrawing from the agreed-upon settlement. *Id*. at 259. Jonas pursued his appeal with the Seventh Circuit, which vacated the judgment of the District Court and remanded the case with instructions to dismiss for lack of subject matter jurisdiction.

[10] On April 13, 2015, Jonas filed a complaint against State Farm in Hamilton Superior Court, alleging that State Farm owed him interest and attorney fees and that State Farm committed bad faith and owed punitive damages. Jonas filed a motion for partial summary judgment, requesting judgment in his favor regarding his claim for interest and attorney fees. State Farm filed a

counterclaim against Jonas, alleging that Jonas breached the terms of the settlement agreement and seeking enforcement of the agreement. State Farm filed a cross-motion for summary judgment, requesting judgment in its favor to enforce the terms of the settlement agreement. After a hearing on the motions, the trial court issued its findings of fact and conclusions thereon, granting summary judgment in favor of State Farm. Jonas now appeals.

## Discussion and Decision

When reviewing the grant of summary judgment, our standard of review is the same as that of the trial court. *FLM, LLC v. Cincinnati Ins. Co.,* 973 N.E.2d 1167, 1173 (Ind. Ct. App. 2012) (citing *Wilcox Mfg. Grp., Inc. v. Mktg. Servs. of Ind., Inc.*, 832 N.E.2d 559, 562 (Ind. Ct. App. 2005)), *trans. denied.* We stand in the shoes of the trial court and apply a *de novo* standard of review. *Id.* (citing *Cox v. N. Ind. Pub. Serv. Co.,* 848 N.E.2d 690, 695 (Ind. Ct. App. 2006)). Our review of a summary judgment motion is limited to those materials designated to the trial court. Ind. Trial Rule 56(H); *Missler v. State Farm,* 41 N.E.3d 297, 301 (Ind. Ct. App. 2015). Summary judgment is appropriate only where the designated evidence shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. T.R. 56(C). For summary judgment purposes, a fact is "material" if it bears on the ultimate resolution of relevant issues. *FLM,* 973 N.E.2d at 1173. We view the pleadings and designated materials in the light most favorable to the non-moving party. *Id.* Additionally, all facts and reasonable inferences from those facts are

construed in favor of the non-moving party. *Id.* (citing *Troxel Equip. Co. v. Limberlost Bancshares,* 833 N.E.2d 36, 40 (Ind. Ct. App. 2005), *trans. denied*).

[12]     A trial court's grant of summary judgment is clothed with a presumption of validity, and the party who lost in the trial court has the burden of demonstrating that the grant of summary judgment was erroneous. *Id.* Where a trial court enters specific findings and conclusions, they offer insight into the rationale for the trial court's judgment and facilitate appellate review, but are not binding upon this court. *Id.* We will affirm upon any theory or basis supported by the designated materials. *Id.*

[13]     The party moving for summary judgment bears the initial burden to demonstrate the absence of any genuine issue of fact as to a determinative issue. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The burden then shifts to the non-movant to present contrary evidence showing an issue for the trier of fact. *Id.* "Although the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court." *McSwane v. Bloomington Hosp. & Healthcare Sys.,* 916 N.E.2d 906, 909-10 (Ind. 2009) (internal quotation marks omitted).

[14]     Jonas argues that the trial court erred in granting summary judgment in favor of State Farm. He asserts that the trial court erroneously found that there was a valid settlement agreement between him and State Farm because there was no meeting of the minds and the agreement was not in writing or signed by the

parties. Jonas also contends that State Farm waived any argument that there was a settlement agreement when it failed to raise the issue to the Seventh Circuit. He further alleges that all matters of settlement discussion in the Seventh Circuit proceedings were confidential, and State Farm violated these provisions when it raised the settlement issue to the trial court. Additionally, Jonas argues that Texas law clearly granted him the full amount of damages he requested, and the trial court erred in not awarding him the 18% interest and attorney fees he requested.

[15] "Indiana strongly favors settlement agreements and if a party agrees to settle a pending action, but then refuses to consummate his settlement agreement, the opposing party may obtain a judgment enforcing the agreement." *Sands v. Helen HCI, LLC*, 945 N.E.2d 176, 180 (Ind. Ct. App. 2011) (citing *Georgos v. Jackson,* 790 N.E.2d 448, 453 (Ind. 2003)), *trans. denied*. Settlement agreements are governed by the same general principles of contract law as other agreements. *Id.* Generally, a settlement agreement is not required to be in writing. *Id*. The existence of a contract is a question of law, and the basic requirements of a contract are offer, acceptance, consideration, and "a meeting of the minds of the contracting parties." *Batchelor v. Batchelor*, 853 N.E.2d 162, 165 (Ind. Ct. App. 2006)*.* When determining if a contract is enforceable, we must consider two interrelated areas: intent to be bound and definiteness of terms. *Sands*, 945 N.E.2d at 180. In order to render a contract enforceable, only the essential terms need be included. *Id*. Whether the parties intended to execute a

subsequent written document is relevant to the determination of intent to be bound. *Id.*

[16] An agreement to settle a claim in federal court is enforced just as any other contract. *Dillard v. Starcom Int'l, Inc.*, 483 F.3d 503, 506 (7th Cir. 2007). State law governs whether a contract to settle a case was made. *Id.* While some litigants believe that "they can change their mind at any time before they actually sign the settlement agreement[,] . . . that perception is often unfounded in the law." *Pohl v. United Airlines, Inc.,* 213 F.3d 336, 337 (7th Cir. 2000) (affirming district court's enforcement of settlement agreement).

[17] Here, the following evidence was designated to the trial court by State Farm. On April 15, 2014, State Farm and Jonas, through his counsel, reached a verbal settlement agreement to settle all of Jonas's claims for $60,000. State Farm then sent Jonas's counsel a proposed Final Release Agreement that included a confidentiality provision. On April 21, 2014, Jonas's counsel sent an email response objecting to the inclusion of the confidentiality provision. In the same email, however, counsel for Jonas stated: "As a result, if we do not have an agreement by the end of business today, we will withdraw our offer to settle . . . . The settlement includes the removal of any confidentiality clause in the proposed release that you sent to me." *Appellee's App*. at 254. Later that same day, State Farm's counsel responded to the email and stated that, "State Farm agrees to remove the confidentiality paragraph." *Id*. Jonas's counsel responded one minute later, stating, "Fine. When can my client expect to be paid?" *Id*. On April 28, 2014, State Farm's counsel emailed Jonas's counsel, attached the

agreed-upon Final Release Agreement without the confidentiality provision, and informed him that the settlement check had been received and would be placed in the mail. The next day, Jonas's counsel emailed a response, advising State Farm that Jonas was withdrawing from the agreed-upon settlement.

[18] In his response to State Farm's motion for summary judgment, Jonas stated that, "[d]uring the time of rejection and [State Farm's] reconsideration, [Jonas] decided that the offer of settlement was not a good one for him and therefore rejected it totally." *Appellee's App*. at 260. In support of this, Jonas cited to his affidavit, where he averred, "[w]hile I initially thought that I would accept an amount, after State Farm's counsel inserted new matters into what they termed a 'settlement agreement,' I reconsidered and rejected their proposal." *Appellee's App*. at 280-81. Jonas's evidence, however, does not rebut any of the evidence designated by State Farm. Therefore, the evidence was undisputed that Jonas entered into a settlement agreement with State Farm and agreed to all of the terms of the Final Release Agreement. Jonas's designated evidence does not dispute that his counsel had the authority to bind Jonas to the agreement. The evidence established that Jonas agreed to all of the terms of the settlement agreement, and the evidence he presented merely showed that he refused to follow through with the settlement, which is a breach of the settlement agreement. State Farm was therefore entitled to judgment as a matter of law, and the trial court did not err in granting summary judgment in its favor.

[19] Jonas also argues that the settlement agreement was not enforceable because Indiana law requires mediated settlement agreements to be in writing and

signed by the parties, citing to *Vernon v. Acton*, 732 N.E.2d 805, 809 (Ind. 2000) ("[W]hen a settlement agreement is reached in mediation, the mediation rules required that it shall be reduced to writing and signed."). However, at the time the settlement agreement was reached between Jonas and State Farm, there was no pending lawsuit between the parties in any Indiana state court. As our Supreme Court stated in *Vernon*, "[t]he A.D.R. Rules apply only to 'all civil and domestic relations litigation filed' in Indiana trial courts, subject to certain exceptions not relevant to this case." 732 N.E.2d at 810 n.5 (quoting Ind. Alternative Dispute Resolution Rule 1.4). The Indiana Alternative Dispute Resolution Rules ("ADR rules") did not apply to the settlement agreement reached between Jonas and State Farm, and therefore, the settlement agreement was not required to be in writing or signed by the parties to be enforceable.

[20]     Jonas further contends that, pursuant to the ADR rules, communications during negotiations are to be kept confidential, and State Farm was not permitted to use the negotiations between it and Jonas as evidence. The above analysis applies equally to this argument. The Indiana ADR Rules do not apply to the settlement negotiations in this case as there was no pending case in Indiana state court at the time of the negotiations.[1]

---

[1] Jonas also contends that all matters of settlement discussion in the Seventh Circuit proceedings were confidential and could not be used in any other litigation, citing to the Seventh Circuit's website discussing its settlement conference program. However, Jonas did not argue that State Farm violated these confidentiality provisions to the trial court and did not designate any evidence to support such an argument. Our review of a summary judgment motion is limited to those materials designated to the trial court. Ind. Trial Rule 56(H). We, therefore, cannot look to such evidence in our review.

[21] Jonas additionally contends that State Farm was barred from enforcing the settlement agreement because it did not raise the issue of the settlement agreement to the Seventh Circuit. He argues that State Farm has waived the issue of enforcing the settlement agreement because it failed to take action to enforce the settlement agreement during the proceedings in the Seventh Circuit, and because it did not do so, State Farm should be barred from enforcing the agreement now.[2] In particular, Jonas points to an email from the "'settlement group' of the Seventh Circuit" that acknowledges that "there was never a settlement of this case, that State Farm would not pursue a breach of contract suit," and that the appeal would continue with briefing. *Appellant's Br.* at 10.

[22] In *Herrnreiter v. Chicago Hous. Auth.*, 281 F.3d 634 (7th Cir. 2002), the Seventh Circuit stated that "[a]n appeal continues until either (a) the litigants sign a mutually satisfactory written agreement that entails the dismissal of the appeal under [Federal Rule of Appellate Procedure] 42(b), or (b) the appellant actually files a notice of dismissal under Rule 42(b)." 281 F.3d at 637. Neither of these actions occurred here, or could have occurred, as State Farm was not the appellant in the Seventh Circuit. Therefore, State Farm had no choice at the

---

[2] Jonas also argues that State Farm should be barred from arguing the issue of enforcing the settlement agreement due to claim preclusion. "Claim preclusion is applicable when a final judgment on the merits has been rendered and acts to bar a subsequent action on the same claim between the same parties." *TacCo Falcon Point, Inc. v. Atl. Ltd. P'ship XII*, 937 N.E.2d 1212, 1218 (Ind. Ct. App. 2010). In the present case, the Seventh Circuit did not render a judgment on the merits of the case; instead, it vacated the judgment of the District Court and dismissed the case for lack of subject matter jurisdiction. As the Seventh Circuit did not reach a decision on the merits, it did not render a judgment that acts "to bar a subsequent action on the same claim between the same parties." *Id.*

Seventh Circuit but to allow Jonas's appeal to continue. *Herrnreiter* further states that, even if State Farm could not seek specific performance of the settlement agreement during appeal, it was not precluded from pursuing a suit for damages on the oral agreement. *Id*. at 637-38. However, although "oral settlement agreements are enforceable . . . and may form the basis for recovery[,] . . . because settlement agreements are contracts, and thus governed by state law, those suits must occur in state court unless the parties are of diverse citizenship and the stakes exceed $75,000." *Id*. at 638. State Farm therefore could not file a separate case in federal court to enforce the settlement agreement because the amount in controversy would not be met. Even if State Farm had filed a case to enforce the settlement agreement in state court, the state court would have had no jurisdiction to interfere with the federal appeal.[3]

[23]  Even if the doctrine of waiver was applicable, waiver is an intentional relinquishment of a known right, which can be done expressly or impliedly. *Westfield Nat'l Ins. Co. v. Nakoa*, 963 N.E.2d 1126, 1132 (Ind. Ct. App. 2012), *trans. denied*. Jonas cites to an email from the Seventh Circuit mediator that stated, "State Farm will defend the appeal and not pursue a breach of contract action." *Appellant's App*. at 26. This email was sent to Jonas and his counsel, but not to State Farm's counsel. Additionally, the email misstated State Farm's

---

[3] Jonas cites to *Welty Bldg. Co. v. Indy Fedreau Co., LLC*, 985 N.E.2d 792 (Ind. Ct. App. 2013) for his argument that State Farm waived its right to seek enforcement of the settlement agreement. That case, however, did not involve a question of enforcement of a settlement agreement; instead, it involved whether a party could waive a contractual right to arbitrate a matter after that party had filed a lawsuit for breach of that contractual agreement.

position.  That is, in an email sent to the Seventh Circuit mediator from State Farm prior to the one sent to Jonas, State Farm stated, "State Farm has authorized us to instruct you that it will proceed with the appeal in response to . . . Jonas's decision to not follow through with the settlement agreement." *Appellee's App*. at 295.  That email from State Farm to the Seventh Circuit did not state that State Farm was not pursuing a breach of contract action.  Therefore, we find that State Farm did not expressly relinquish its right to enforce the settlement agreement.  The evidence also does not support an implied waiver as State Farm did not take any litigation action consistent with a waiver of its right.  Jonas was the appellant in the Seventh Circuit, and when he made the decision to pursue an appeal, State Farm had to defend itself in the appeal.

[24]  We, therefore, conclude that no genuine issue of material fact exists as to whether a valid settlement agreement existed between State Farm and Jonas and as to whether Jonas breached this settlement agreement.  Consequently State Farm is entitled to judgment as a matter of law to enforce the settlement agreement.  The trial court did not err in granting summary judgment in favor of State Farm.[4]

---

[4] In his Appellant's Brief, Jonas makes a lengthy argument that, under Texas law, he was entitled to the full amount of damages he requested, including penalty interest and attorney fees and relies heavily on the Seventh Circuit decision.  However, the Seventh Circuit's decision's relevant holding was that the "judgment of the district court is vacated, and the case is remanded with instructions to dismiss for lack of subject matter jurisdiction."  *State Farm Life Ins., Co. v. Jonas*, 775 F.3d 867, 870 (7th Cir. 2014).  When a federal court lacks jurisdiction, it cannot proceed to determine the merits of the case.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  Therefore, the Seventh Circuit's decision could not, and did not, reach the merits of

Affirmed.

Mathias, J., and Brown, J., concur.

---

whether Jonas was entitled to penalty interest or attorney fees under Texas law. Further, because we have determined that Jonas breached an enforceable settlement agreement, we are not required to further analyze Jonas's arguments as to why he believes he is entitled to interest and attorney fees under Texas law.