In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2601

LOIS MARIE TRASK,

*Plaintiff-Appellant,*

*v.*

EDGAR RODRIGUEZ, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:13-cv-00001-RL-PRC — **Rudy Lozano**, *Judge.*

SUBMITTED MARCH 27, 2017 — DECIDED APRIL 27, 2017

Before POSNER, SYKES, and HAMILTON, *Circuit Judges.*

POSNER, *Circuit Judge.* Lois Trask was gambling at the Horseshoe Casino in Hammond, Indiana, when she picked up a $20 bill from the casino floor. Casino personnel determined from security videos that another patron had dropped the cash, and for more than an hour Trask was de-

tained and accused of being a thief. Claiming that the detention had violated her rights, she filed this suit under both 42 U.S.C. § 1983 and Indiana tort law.

The casino's security cameras captured the entire episode. A man leaving a change machine dropped the $20 bill, and Trask, who was standing nearby with her back to him, turned around and picked up his money after he had walked away. It's impossible to tell from the videos, however, whether Trask saw him drop the $20 bill or even knew that he'd been standing behind her.

At some point the man realized that he was out $20 and contacted casino management. He thought the change machine had short-changed him, but casino staff after viewing the security videos realized that Trask had picked up the $20 bill. By then several hours had passed, but she was still at the casino, so the security supervisor confronted her. Trask said she'd picked up the money thinking it was hers—that she dropped it. She and the supervisor soon were joined by two law-enforcement agents employed by the Indiana Gaming Commission. They said that Trask could be seen on video pocketing the $20 bill, but she repeated that she'd thought it her own money.

With the supervisor and the two agents watching, Trask began calling friends who might be able to bring her $20 to give the agents to get them off her back. After ten minutes, however, before any friends had arrived, one of the agents asked her to put away her cellphone and follow him to the security office. When she ignored him, he grabbed the phone and pulled Trask by her coat sleeve until she started walking, then led her to the office, sometimes placing a hand on her arm or shoulder to guide her.

She was taken to an interview room where the same agents asked that she look in her purse for her driver's license. She dumped the contents onto a table, and agreed to be patted down; she was not frisked, and one of the agents returned her cellphone so that she could resume soliciting money from friends.

There was $8 in the purse, which the agents seized. And because she couldn't find her driver's license (and the agents were unable to find her name in a casino database), the agents escorted her outside to look in her car. There she found the license and $5, both of which the agents confiscated. She was then returned to the security office, where she was told she was banned from the casino and would be arrested if she tried to return. She was then released—after nearly seventy minutes—but the agents kept the $13 that they had taken from her.

A year later she filed this pro se lawsuit against the casino, the casino's security supervisor, and the two agents. She alleged that the agents had detained her without cause, had used excessive force in taking her phone and marching her to the security office, and had searched her purse, coat, and car without authorization, all in violation of the Fourth Amendment. She also alleged that they'd committed state-law torts, including false arrest, battery, and intentional infliction of emotional distress.

A magistrate judge declined to recruit pro bono counsel for Trask and also ruled on other pretrial matters, including discovery disputes and her objection, which the judge rejected, to being deposed in the presence of a paralegal employed by defense counsel. The day after that deposition, Trask contacted the lawyer for the casino and the security

supervisor to propose settling her case. Trask wanted meal vouchers and access to the casino; the casino lawyer offered her $100, which she accepted over the phone but later rejected in a voicemail to the lawyer, who responded by offering her an extra $150 (on top of the $100 offered earlier) if she would settle. She refused, on the ground that "We both agreed and I had a change of heart and I called you within 24 hours. According to my knowledge any agreement can be legally undone within 3 days."

The defendants asked the district court to enforce the settlement. At an evidentiary hearing Trask denied having made a deal and insisted she'd only promised to consider, and had later rejected, the casino lawyer's $100 offer. The lawyer reminded her that she'd agreed by phone to accept $100 to settle the case; the court agreed and ordered the settlement enforced and her claims against the casino and the security supervisor dismissed. Her notarized letter to the casino's lawyer had included an unambiguous admission that she'd agreed to accept $100 in satisfaction of her claims against these defendants. Her belief that she could agree but then back out is "unfounded in the law." *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 337 (7th Cir. 2000). Indiana law (which governs her state-law claim) does not (as Trask thinks) provide a three-day "cooling off" period before an oral settlement can be enforced. *Jonas v. State Farm Life Ins. Co.*, 52 N.E.3d 861, 868 (Ind. Ct. App. 2016); *Georgos v. Jackson*, 790 N.E.2d 448, 453 (Ind. 2003).

The agents moved for summary judgment, arguing that Trask's detention had been supported by reasonable suspicion and had lasted no longer than necessary to investigate the alleged theft, obtain identification, and recover what

money they could. Temporarily confiscating her phone was, they added, a reasonable step, because she wouldn't hang up when told to. They further added that it had been necessary to tug on Trask's coat and take her by the arm or shoulder while guiding her to the security office, and that they hadn't searched her purse or car—she'd conducted those searches herself, the agents insisted, and furthermore had consented to the pat down of her coat. And finally her state-law claims were barred, they said, because she hadn't filed notice of them with the Indiana Gaming Commission and the Indiana Political Subdivision Risk Management Commission, as required by the Indiana Tort Claims Act, Ind. Code § 34-13-3-8.

The agents served Trask by mail and included the instructions routinely given to pro se litigants, explaining how to oppose a motion for summary judgment. See N.D. Ind. L.R. 56-1(f); *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992). She failed to respond to the motion (thereby failing to oppose it), and almost a month later sought leave to dismiss her claims against the agents on condition that she be allowed to reinstate the suit within two years. The agents opposed this unusual request, and the district court denied it and warned that she must respond to the motion for summary judgment if she wanted to keep her case alive. Although the warning was mailed to Trask, she never did respond to the motion.

A month later the district court granted summary judgment in favor of the agents, agreeing with their interpretation of the evidence. This decision got Trask's attention, and she moved to set it aside on the ground that she'd never received the agents' motion for summary judgment. The dis-

trict court, unimpressed, responded that Trask must have known about the pending motion because it had been mailed to her and mentioned in other documents, including the order denying her motion for voluntary dismissal.

As an original matter we might question whether the evidence presented by the defendants in support of their motion for summary judgment—despite being undisputed—would *require* a jury to find that the agents had acted reasonably in detaining Trask on a thin thread of evidence of petty theft and in holding her for more than an hour, ostensibly to identify her but quite possibly just to obtain $20 to give to the casino patron who had claimed to lose the money. But Trask doesn't challenge the district court's reasons for granting summary judgment, and has thus waived any claim of error.

She does advance a procedural objection to the grant of summary judgment—that the district judge should have granted a Rule 60(b) motion that she filed, and reopened the proceeding after she said she'd never received the motion for summary judgment. The judge was unpersuaded, noting that several items mailed to Trask, including the judge's order denying her motion to dismiss the case, should have alerted her to the pending motion for summary judgment. And she concedes that she did receive the order denying her motion for voluntary dismissal—an order that explicitly warned her that she had to respond to the motion for summary judgment. If as she claims (though without support in the record) she didn't have a copy of the agents' motion, she should have called defense counsel and asked for another copy. She didn't.

Trask further contends that the district court erred in enforcing her settlement with the casino and its employee—but the court's choice to believe the testimony of the casino's lawyer is unassailable. She also contends that the magistrate judge assigned to the case (as distinct from the district judge, who decided all the substantive and procedural issues) should not have ruled on pretrial disputes, since she never consented to his ruling on them and, she surmises, he must have been biased because he ruled against her repeatedly. But magistrate judges are authorized to decide nondispositive pretrial issues without consent, though subject to oversight by the district court. 28 U.S.C. § 636(b)(1)(A); N.D. Ind. L.R. 72-1(b); *Schur v. L.A. Weight Loss Centers Inc.*, 577 F.3d 752, 760 (7th Cir. 2009). And adverse rulings are not evidence of judicial bias. See *Litecky v. United States*, 510 U.S. 540, 555 (1994); *Thomas v. Reese*, 787 F.3d 845, 849 (7th Cir. 2015).

One matter remains to be considered: during briefing, Trask asked this court to order the defendants to produce "an unedited copy of the security tape," which, she says, would show more of the encounter between her and the agents. She had asked the defendants during discovery for all surveillance video in their possession, and they had replied that they had complied with this demand. She never asked the district court to compel disclosure, so she will not be heard to complain about his failure to do so.

The judgment of the district court is

AFFIRMED.