# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 08 2019, 8:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John E. Kolas
Kolas Law Firm, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Jeffrey A. Boggess
Jeffrey A. Boggess, P.C.
Greencastle, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| S&C Financial Group, LLC, *Appellant-Plaintiff,* | May 8, 2019 |
| | Court of Appeals Case No. 18A-PL-1787 |
| v. | Appeal from the Putnam Superior Court |
| Darren Gaston, *Appellee-Defendant* | The Honorable Charles D. Bridges, Judge |
| | Trial Court Cause No. 67D01-1803-PL-11 |

**Vaidik, Chief Judge.**

# Case Summary

[1] S&C Financial Group, LLC, entered into an oral agreement with Darren Gaston to sell him a house. When S&C filed an eviction action against Gaston

in Putnam County small-claims court, the parties entered into a settlement agreement, and S&C dismissed the case. S&C later sued Gaston for possession of the real estate in Putnam Superior Court. The trial court found that Gaston, not S&C, was the rightful owner and ordered S&C to give Gaston a deed to the property and pay $1,275 of his attorney's fees. S&C now appeals. We affirm as to all issues except the trial court's award of attorney's fees to Gaston.

## Facts and Procedural History

[2] S&C is an Indianapolis company that acquires tax-sale properties, fixes them, and then rents or sells them. Tr. p. 6. Scott Wynkoop is the owner of S&C. Gaston worked as a subcontractor for S&C. S&C purchased a "rehab" house on Apple Street in Greencastle at a tax sale in October 2014. *Id.* at 6, 31. Thereafter, S&C and Gaston entered into an oral agreement whereby S&C would sell the Apple Street property to Gaston for $13,000. In October 2015, Gaston paid S&C $2,000 toward the purchase price and moved in and began making extensive repairs to the house, including adding electrical and plumbing. Gaston made additional payments toward the purchase price in the form of S&C deducting varying amounts from his paychecks. *See* Ex. E (deductions in August and September 2016).

[3] On June 19, 2017, Wynkoop texted Gaston that his last payment was April 17 for $250, which "leaves a balance of $2305." Ex. B. Wynkoop added that "[w]hen it's paid off, I will hand you a deed that you can go on record at county. It was never supposed to take this long to pay it off. I hadn't even

charged any interest." *Id.* On June 26, Gaston paid S&C $305, leaving a balance of $2,000. Tr. p. 43.

[4] In July, Gaston developed an infection in his brain, was hospitalized, and underwent brain surgery. He could not work for a year and thus S&C was no longer able to deduct money from his paychecks.

[5] About a month after Gaston's brain surgery, S&C filed a Notice of Claim for Eviction against Gaston in Putnam County small-claims court. *See* 67D01-1708-SC-388. S&C alleged as follows: "No lease in place. Verbal agreement. Tenant is no longer making payments." Appellant's App. Vol. II p. 13. An eviction hearing was set for September 21. When Wynkoop and Gaston appeared at court for the hearing, they reached an oral agreement off the record to settle the case, under which Gaston would pay S&C $3,855 and S&C would give Gaston a deed to the Apple Street property. The court reporter was present during the parties' negotiations and told them that if they reached an agreement, a dismissal would have to be filed. Wynkoop then signed an order-of-dismissal form indicating that the "parties have reached an agreement." The judge signed the order that same day. *See* Order of Dismissal, 67D01-1708-SC-388 (Sept. 21, 2017).

[6] As soon as he left the courthouse in Putnam County, Gaston went to the bank to get a $3,855 cashier's check. He then drove to S&C's office in Indianapolis, gave the check to an employee, and got a "paid in full" receipt. Ex. A. Wynkoop arrived at S&C's office right after Gaston left and was told by the

employee that Gaston had made the payment but that he was still planning on pursuing a mechanic's lien that he had recorded on an unrelated property. Wynkoop immediately texted Gaston as follows: "Come back and pick up your check. I am not going to accept the payment until everything is settled . . . . I'm not going to have you threaten a lawsuit against me." Ex. B. Gaston texted back "Ur paid," to which Wynkoop responded: "I am not going to deposit the check and I am not going to prepare the deed until that is resolved. I'm not going to be threatened." *Id.* S&C then returned the cashier's check to Gaston via certified mail.

[7] In January 2018, S&C filed a new Notice of Claim for Eviction against Gaston in Putnam County small-claims court. *See* 67D01-1801-SC-1. S&C alleged as follows: "No lease in place. Verbal agreement. Occupant has made no payments since June 2017." Appellant's App. Vol. II p. 14. Gaston filed a motion to dismiss alleging that he was not leasing the Apple Street property but rather purchasing it on contract and that the "matter should be filed on the civil plenary docket." *Id.* at 16. The next day, the small-claims court dismissed the case. S&C filed a motion to reconsider, which the court denied.

[8] In March, S&C filed a Complaint for Possession of Real Estate and for Damages against Gaston in Putnam Superior Court. *See* 67D01-1803-PL-11. In the complaint, S&C acknowledged that Wynkoop and Gaston had reached an agreement at the courthouse whereby Gaston would pay S&C $3,855 and S&C would give him a deed to the Apple Street property. Appellant's App. Vol. II p. 32. However, S&C claimed that the agreement also required Gaston

to release the mechanic's lien on the unrelated property, which he did not do and therefore breached the agreement. Accordingly, S&C asked for immediate possession of the real estate and damages. At S&C's request, the court set a hearing for possession only.

[9] Wynkoop, the court reporter, and Gaston testified at the hearing. First, Wynkoop testified that the oral agreement he made with Gaston for the sale of the Apple Street property "was that if he paid me $13,000 in 12 months, then I would convey the property to him." Tr. p. 18. Wynkoop also testified that the agreement he made with Gaston at the courthouse to settle the case was that if Gaston paid $3,855 to S&C and released the mechanic's lien on the unrelated property, then S&C would give him a deed to the Apple Street property. *Id.* at 15. When Wynkoop was asked on cross examination if he and Gaston had discussed the mechanic's lien during their negotiations at the courthouse, Wynkoop responded, "I can't say for sure if it was." *Id.*

[10] Next, the court reporter testified that the parties reached an agreement that Gaston had to pay $3,855 to S&C and that S&C dismissed the case that same day. She also testified that the parties did not discuss the mechanic's lien during their negotiations. *Id.* at 26-27.

[11] Finally, Gaston testified that the oral agreement he made with Wynkoop for the sale of the Apple Street property was that he had to pay S&C $13,000 and that there was no hard-and-fast deadline for when the $13,000 had to be paid. Gaston also testified that the settlement agreement he reached with Wynkoop

at the courthouse was that he had to pay $3,855 in order to get a deed to the Apple Street property. Gaston said the mechanic's lien was not part of their agreement because that was "a separate issue." *Id.* at 35.

[12] Thereafter, the trial court issued an order finding that the parties entered into a settlement agreement in September 2017, that Gaston fulfilled his duties pursuant to the settlement agreement when he presented the cashier's check for $3,855, and that S&C breached the settlement agreement when it refused to accept the payment. The court therefore ordered Gaston to "pay the $3,855 agreed upon by the parties" and "retain possession of the property" and ordered S&C to "execute a quit claim deed to the property within ten (10) days of receiving Gaston's payment." Appellant's App. Vol. II p. 55. The court also ordered S&C to pay $1,275 of Gaston's attorney's fees.

[13] S&C now appeals.

# Discussion and Decision

[14] S&C appeals the trial court's order on several grounds. In ruling in favor of Gaston, the trial court made several findings. Pursuant to Indiana Trial Rule 52(A), the reviewing court will not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. *Steele-Giri v. Steele*, 51 N.E.3d 119, 123 (Ind. 2016).

[15]     First, S&C contends that the trial court "erred in issuing an order on all matters, as the scheduled hearing was limited to the issue of possession only, with any subsequent hearing to be scheduled at the request of a party." Appellant's Br. p. 13. Specifically, S&C argues that the court should have held a "bifurcated proceeding." *Id.* at 23. That is, if the court found that S&C was not entitled to immediate possession after the first hearing, then "the proper course of conduct would have been for the Court to conduct a hearing on remaining issues, including the possibility of S&C obtaining possession, at a later date." *Id.* at 24. However, any potential "remaining issues" were necessarily resolved when the trial court determined that Gaston was entitled to possession and ownership of the Apple Street property. As indicated below, the court enforced the parties' settlement agreement, which provided for Gaston to receive a deed to the Apple Street property upon the payment of $3,855 to S&C. The trial court did not err in disposing of the entire case after the first hearing.

[16]     Second, S&C contends that the trial court erred in concluding that the parties entered into an enforceable settlement agreement in September 2017 because "[t]he facts . . . do not support a meeting of the minds." *Id.* at 20. A settlement is an agreement to terminate or forestall all or part of a lawsuit. *Harding v. State*, 603 N.E.2d 176, 179 (Ind. Ct. App. 1992), *trans. denied*; *see also Vance v. Lozano*, 981 N.E.2d 554, 558 (Ind. Ct. App. 2012) ("A 'compromise' or 'settlement' is a contract between two or more people to amicably settle or adjust their differences on such terms as they can agree." (citing 15B Am. Jur. 2d *Compromise & Settlement* § 1 (2011)). Indiana strongly favors settlement

agreements. *Georgos v. Jackson*, 790 N.E.2d 448, 453 (Ind. 2003), *reh'g denied*. Settlement agreements are governed by the same principles of contract law as other agreements and require an offer, acceptance, consideration, and meeting of the minds. *Jonas v. State Farm Life Ins. Co.*, 52 N.E.3d 861, 868 (Ind. Ct. App. 2016), *trans. denied*. Generally, a settlement agreement is not required to be in writing.[1] *Id.* The breach of a settlement agreement by one of the parties is actionable, and a trial court has the power to order specific performance. *Harding*, 603 N.E.2d at 179.

[17] Here, it is undisputed that the parties reached an oral agreement at the courthouse to settle the case and that S&C dismissed the case that same day. That is, the parties agreed that Gaston would pay S&C $3,855 and S&C would give Gaston a deed to the Apple Street property. However, the parties dispute whether the agreement contained an additional term. Wynkoop testified that the agreement also required Gaston to release the mechanic's lien on the unrelated property. Tr. p. 15; *see also* Appellant's App. Vol. II p. 32 (S&C's complaint conceding that "an agreement had been made to resolve issues for the payment of $3,855.00" but "only with the understanding [Gaston] would also release a Mechanic's Lien"). Gaston and the court reporter, however, testified that the mechanic's lien was not part of the parties' agreement. The

---

[1] S&C notes that when a contract is required by law to be in writing, it can only be modified by a written instrument. *See Huber v. Hamilton*, 33 N.E.3d 1116 (Ind. Ct. App. 2015), *reh'g denied*. Here, however, the parties did not modify their original oral agreement regarding the sale of the Apple Street property. Rather, they entered into an agreement to settle the pending small-claims case. S&C does not cite any authority for the proposition that **settlement agreements** regarding the sale of real estate must be in writing.

trial court heard both versions and believed Gaston's and the court reporter's testimony that the mechanic's lien was not part of the agreement. *See* 15B Am. Jur. 2d *Compromise & Settlement* § 7 (Feb. 2019 update) ("A party's mental reservations and unexpressed intentions will not supersede outward expressions of assent or override objective and unequivocal manifestations of assent to terms of the settlement agreement."). This evidence supports a conclusion that there was a meeting of the minds.

[18] Third, S&C contends that the parties' oral agreement for the sale of the Apple Street property is not enforceable because it was not in writing, as required by the Statute of Frauds. However, S&C can no longer challenge this agreement because it entered into a subsequent agreement with Gaston to settle the parties' dispute regarding the sale of the Apple Street property. A settlement agreement supersedes and extinguishes all preexisting claims the parties intended to settle and is effective except as to those claims specifically reserved. 15B Am. Jur. 2d *Compromise & Settlement*, § 24 (Feb. 2019 update). Accordingly, if S&C believed that the parties' oral agreement for the sale of the Apple Street property was not enforceable because it was not in writing, then it shouldn't have entered into the settlement agreement with Gaston. Having done so, it cannot now go back and challenge the parties' original agreement for the sale of the Apple Street property.

[19] Finally, S&C contends that the trial court erred in ordering it to pay $1,275 in attorney's fees because Gaston "made no claim for attorney fees whatsoever," either in his pleadings or at the hearing. Appellant's Br. p. 26. Indiana follows

the American Rule, which requires each party to a lawsuit to pay its own attorney's fees absent an agreement between the parties, statutory authority, or an equitable exception. *Loparex, LLC v. MPI Release Techs., LLC*, 964 N.E.2d 806, 815-16 (Ind. 2012). Gaston argues that we should affirm the trial court's award of attorney's fees because "S&C litigated in bad faith." Appellee's Br. p. 17 (citing Ind. Code § 34-52-1-1). However, Gaston did not make such a "bad faith" argument below, nor did he request an award of attorney's fees, nor did he present any evidence as to the amount of attorney's fees he had incurred. We therefore reverse the trial court's award of attorney's fees to Gaston.

[20] Affirmed in part, reversed in part.

Mathias, J., and Crone, J., concur.