NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 2, 2020[*]
Decided October 2, 2020

**Before**

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

Nos. 19-1470 & 19-1634

| | |
|---|---|
| CURTIS L. WESTBROOK,<br>    *Plaintiff-Appellant/*<br>    *Cross-Appellee,*<br><br>    *v.*<br><br>DANIEL HAHN, et al.,<br>    *Defendants-Appellees,*<br><br>and<br><br>MUNCIE CITY COURT,<br>    *Defendant-Appellee/*<br>    *Cross-Appellant.* | Appeals from the United States District Court for the Southern District of Indiana, Indianapolis Division.<br><br>No. 1:16-cv-00274-WTL-DLP<br><br>**William T. Lawrence**,<br>*Judge*. |

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

**O R D E R**

Curtis Westbrook sued several city and county employees and entities, the Muncie City Court, and Judge Dianna Bennington after Bennington issued an order of contempt against him, resulting in him being jailed for 10 days. The district court recruited an attorney for Westbrook, and the attorney negotiated a settlement agreement. When the defendants moved to enforce it, however, Westbrook objected. The district court then concluded that a binding oral agreement had been reached. On appeal, Westbrook argues that he did not agree to the settlement and that Bennington was not entitled to judicial immunity. The Muncie City Court cross-appeals, arguing that the district court should have found it immune from suit. We affirm the district court's rulings in Westbrook's appeal, and we dismiss the cross-appeal as unnecessary.

This suit stems from an incident in February 2014 in Muncie, Indiana: In the courtroom during his son's criminal proceedings in the Muncie City Court, Westbrook distributed fliers criticizing then-Judge Dianna Bennington and the unavailability of a jury trial for his son. He was removed from the courtroom, but when he returned the next day, Judge Bennington ordered him to be arrested and held in contempt. Westbrook was jailed for ten days without a hearing. Later, during disciplinary proceedings in the Indiana Supreme Court, Bennington stipulated that she "abused her contempt powers" by holding Westbrook in contempt and violating his right to due process. Bennington was permanently barred from serving in any judicial capacity.

Westbrook sued the City of Muncie, the Muncie City Court, the Muncie Police Department, the Delaware County Sheriff, deputy sheriff Daniel Hahn, Muncie police officer Matthew Hollans, and Bennington, challenging the constitutionality of his arrest and detention. (He also challenged his treatment at the jail, but those claims were severed and eventually dismissed. *Westbrook v. Del. Cnty. Sheriff*, 790 F. App'x 807 (7th Cir. 2019).) After dismissing Westbrook's initial pleadings at screening for failure to state a claim, the district court recruited an attorney, Mark Miller, to assist Westbrook in amending the complaint; Miller agreed to continue the representation after doing so.

Bennington and the Muncie City Court moved to dismiss the action, arguing that they were not suable. The district court granted the motion as to Bennington, reasoning that she was entitled to absolute judicial immunity because she had acted in her judicial capacity, even if she abused it. But the district court rejected the Muncie City Court's argument that it is a state entity and therefore immune from suit under the Eleventh Amendment and not a "person" subject to suit under 42 U.S.C. § 1983.

The assigned magistrate judge conducted a settlement conference. The parties did not reach settlement at that time but, days later, Miller notified the magistrate judge that they had agreed on a settlement. On August 9, 2018, the magistrate judge entered an order directing Westbrook to file the documents effecting a voluntary dismissal and struck all pending deadlines and court dates. Shortly after, Miller requested a status conference and reported that, though he believed that Westbrook had authorized the settlement, Westbrook did not want to go through with it. Miller then filed a motion to reconsider the August 9 order. The defendants—all but Bennington— filed a response in opposition as well as their own motion to dismiss the case pursuant to the settlement.

In their motion, the defendants explained that, during negotiations after the settlement conference, Miller rejected the defendants' offer of a $10,000 settlement but reported that he was authorized to accept $12,500. The next day, the defendants offered $12,500 in exchange for the dismissal of the case and the release of all of Westbrook's claims against them. Miller accepted, notified the court, and worked with opposing counsel on a written agreement and the dismissal documents. But Miller later reported that Westbrook was dissatisfied and did not want to proceed with the settlement.

In response to the defendants' motion, Westbrook explained that although the parties had agreed on a settlement amount—and, as Westbrook asserted in an affidavit, he had "authorized" his attorney to accept this amount—"there was no meeting of the minds … on the binding terms and conditions" of the settlement. Specifically, Westbrook attested that his acceptance applied only to the amount of the settlement and was subject to his review and approval of a written agreement. Only upon seeing the draft agreement, he continued, did he understand that he would be compensated only for his loss of liberty and would release claims for the injuries that he sustained while in jail. He also did not want to release any claims against the Sheriff's Department. The defendants responded that Miller's telephonic agreement to accept $12,500 for a release of all claims against the defendants necessarily extended to Westbrook's clearly pleaded claim that he suffered physical and emotional damages from his incarceration. Further, they explained, the county sheriff was not a party and not released in the settlement.

Without holding a hearing, the district judge found that the parties had reached a binding settlement and dismissed the case. The court determined that a valid oral agreement had been reached because, at the time Miller accepted the defendants' telephonic offer, the parties had agreed to the material terms: a cash sum in exchange for a release. A written agreement would simply memorialize the deal. The court further determined that Westbrook's objections were not over material terms, because

he had another lawsuit against the Sheriff's Department for his injuries in jail. The district court granted the defendants' motion to dismiss and ordered the entry of a final judgment "awarding" Westbrook $12,500. Westbrook filed a notice of appeal, and so did the Muncie City Court, which, although it was party to the settlement, appealed the denial of its motion to dismiss.

On appeal, Westbrook, now proceeding pro se, argues that there was no binding settlement agreement because he did not agree to material terms concerning the release of his claims.[1] He also challenges the earlier dismissal of Bennington.

We review de novo the "question of whether a settlement agreement exists." *Beverly v. Abbott Labs.*, 817 F.3d 328, 332 (7th Cir. 2016). We apply state contract law—here, Indiana law—in determining the existence of an agreement. *See id.* at 333. Indiana law does not require a contract to be written, so long as the terms are sufficiently definite, and the parties demonstrate an intent to be bound. *Jonas v. State Farm Life Ins. Co.*, 52 N.E.3d 861, 868 (Ind. Ct. App. 2016).

Westbrook argues that, here, the terms were not sufficiently definite because he authorized only the monetary component of the settlement, subject to his review of the terms of a written agreement. Therefore, he argues, there could be no meeting of the minds until he approved those terms. But the acceptance of the unambiguous offer was not conditioned on a writing or on further negotiations with Westbrook personally. All of the elements of a contract existed here: defendants made an offer, Westbrook accepted (through Miller), and the parties agreed on consideration Westbrook would receive $12,500 in exchange for dismissing the lawsuit. *Jonas*, 52 N.E.3d at 868. Thus, when Miller, Westbrook's attorney, communicated the terms to the court, the essential terms were clear. That the parties immediately reported the settlement to the court further supports the conclusion that the essential terms were clear and that the parties intended to be bound. Westbrook's mistaken (and unrealistic) belief that the defendants

---

[1] We note that Westbrook has not told us whether he was paid the $12,500 and, if so, whether he returned it. A settlement agreement is a contract, *United States v. Rogers Cartage Co.*, 794 F.3d 854, 861 (7th Cir. 2015), and a party may not contest the validity of a contract until he has returned the consideration that he received under it. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 717 (7th Cir. 2009). But given Westbrook's most recent financial affidavit (March 27, 2019) and his "understand[ing]" that he "may receive nothing" from his opposition to the settlement, we proceed on the assumption that the defendants have not yet paid him.

would offer him payment while leaving him free to seek certain damages against them was never communicated to the defendants and is not grounds for avoiding the agreement. *See Ind. Bell Tel. Co. v. Mygrant*, 471 N.E.2d 660, 664 (Ind. 1984) (under Indiana law, only a mutual mistake can vitiate a release).

Furthermore, Westbrook's two main concerns are outside the scope of this litigation. First, to the extent that Westbrook is dissatisfied with his recruited lawyer's handling of the settlement negotiations—he refers to counsel mispresenting facts and lying to him—that issue is between Westbrook and the lawyer; it does not render the terms of the contract with the defendants too indefinite to enforce. *See, e.g., Stanciel v. Gramley*, 267 F.3d 575, 581 (7th Cir. 2001). (Whatever details Westbrook wished to negotiate further, he does not dispute that he authorized Miller to accept $12,500 to settle the case, and we do not understand him to be raising an argument based on agency principles.) Second, as the district court concluded, Westbrook's post-hoc objections to the scope of the release do not show a failure to assent to an essential term. His claims associated with the conditions in jail were severed from this litigation and addressed in a different case. *See Westbrook v. Del. Cnty. Sheriff*, 790 F. App'x 807 (7th Cir. 2019). Indeed, we concluded that any claims against the Sheriff's Office or its employees arising from the 10-day incarceration are claim-precluded; nothing in the settlement agreement in this case could possibly have affected his rights in that regard.

Westbrook's final argument is that the district court erroneously dismissed Bennington from the case on judicial-immunity grounds. He contends that because he never had a case in front of Bennington, her contempt order against him was outside the scope of judicial immunity. But, as a judge, Bennington had power to control her courtroom that extended beyond parties litigating in front of her. *See Owen v. Vaughn*, 479 N.E.2d 83, 86 (Ind. Ct. App. 1985). City court judges in Indiana are empowered to issue contempt orders and to enforce their orders. Ind. Code § 33-35-2-1(a)(2)(B)–(C). So, when Bennington ordered Westbrook to stop passing around fliers in her courtroom and then he returned the next day, she was performing a judicial act when she issued a contempt order. That she abused the power or did not comply with due process when doing so does not deprive her of immunity; she still acted within her jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.") (internal quotation marks omitted). *See also Newman v. Deiter*, 702 N.E.2d 1093, 1098 (Ind. Ct. App. 1998).

The judgment of the district court in Appeal No. 19-1470 is AFFIRMED, and Appeal No. 19-1634 is DISMISSED as unnecessary.